WELCH, Judge.
The appellant, William Bush, currently an inmate on death row at Holman Correctional Facility, appeals the circuit court’s denial of his petition for postconviction relief filed pursuant to Rule 32, Ala. R.Crim. P. In 1981, Bush was convicted of murdering Larry Dominguez during the course of a robbery, defined as a capital offense in § 13A-5-40(a)(2), Ala.Code 1975. The jury unanimously recommended that Bush be sentenced to death. The circuit court followed the jury’s recommendation and sentenced Bush to death. Bush’s conviction and death sentence were affirmed on direct appeal. See Bush v. State, 431 So.2d 555 (Ala.Crim.App.1982), aff'd, 431 So.2d 563 (Ala.), cert. denied, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983).
In 1984, as a result of a federal habeas corpus proceeding, Bush was granted a new trial. Bush was tried a second time and was again convicted of capital murder. We reversed Bush’s second conviction based on erroneous jury instructions. See Bush v. State, 523 So.2d 538 (Ala.Crim.App.1988).
In 1991, Bush was tried a third time and was again convicted of capital murder. The jury unanimously recommended that Bush be sentenced to life imprisonment without the possibility of parole. The circuit court chose not to follow the jury’s recommendation and sentenced Bush to death. Bush’s conviction and death sentence were affirmed on appeal. See Bush v. State, 695 So.2d 70 (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.1997). We issued *126 the certifícate of judgment in that appeal on May 7, 1997.
In October 1998, Bush filed a postconviction petition pursuant to Rule 32, .Ala. R.Crim. P., in the Montgomery Circuit Court attacking his capital-murder conviction and sentence of death. He filed amended petitions in October 2000 and July 2001. In July 2004, the circuit court entered its final order denying the post-conviction petition. This appeal followed.
This Court stated the following facts surrounding Bush’s conviction in our opinion on direct appeal:
“The state presented evidence showing that around 3:00 a.m., on July 26, 1981, the appellant and a companion, Edward Lewis Pringle,[1] entered the Majik Market convenience store on Carter Hill Road in Montgomery, Alabama, with the intent to rob the cashier of money to buy drags. When they entered, two people were in the store: Larry Dominguez, the store clerk, and his friend Tony Holmes. Dominguez was in the restroom. The appellant pointed a pistol at Holmes and forced him toward the restroom at the rear of the store. When Dominguez opened the restroom door, the appellant shot both Dominguez and Holmes. The appellant then returned to the front of the store and attempted unsuccessfully to open the cash register. Dominguez stumbled out of the restroom, and the appellant shot him again. Before departing, the appellant took two bags of ‘zodiac sign tags’ from a rack behind the counter near the cash register. The first shot striking Dominguez passed through his chin, lodging in his neck and severing a large artery. The second shot striking Dominguez entered his right shoulder and passed through his lungs and heart. He died quickly at the scene from the injuries caused by the second shot; however, the injuries sustained as a result of the first shot were potentially fatal. Holmes was shot in the throat and, although seriously injured, he survived. He was able to describe his assailant, the pistol, and the automobile the assailants were driving. He described the automobile as a 1973 white-over-green Chevrolet Monte Carlo and the pistol as a nickel-plated .38 caliber short-barreled special.
“After leaving the Majik Market, the appellant and Pringle drove to a nearby Seven-Eleven convenience store on Narrow Lane Road in Montgomeiy, arriving there sometime before 4:00 a.m. The appellant entered the store and purchased a package of Kool cigarettes from the clerk, Thomas Adams. After Adams opened the cash register, the appellant forced him into an office area behind the counter and shot him in the neck with the same pistol he had used to shoot Dominguez and Holmes. The shot to Adams’s neck shattered his spinal cord and killed him instantly. When the shot was fired, the barrel of the pistol was either touching Adams’s neck or within a fraction of an inch of it. The appellant took between $20 to $30 from the cash register, along with a bank bag and checks.
“The appellant made a statement to the police in which he confessed to the crimes. Although in his first statement he claimed that Pringle was the trigger-man in both shootings at the Majik Market and that he was the triggerman in *127 the collateral capital offense at the Seven-Eleven store, in his second statement, he admitted that he fired the shots that killed Dominguez and Adams and that wounded Holmes. In assisting the officers in recovering the weapon, the appellant said to Officer R.T. Ward, when the pistol was recovered, ‘[T]hat’s the weapon that was used to shoot all three people.’ Ballistic tests of the pistol — a nickel-plated .38 caliber short-barreled special — proved that it was the pistol that fired the shots in the commission of the three crimes.”
695 So.2d at 81-82.

Standard of Review

Bush appeals the circuit court’s denial of his Rule 32, Ala. R.Crim. P., petition. “The standard of review this Court uses in evaluating the rulings made by the trial court is whether the trial court abused its discretion. See Elliott v. State, 601 So.2d 1118, 1119 (Ala.Crim.App.1992).” Hunt v. State, 940 So.2d 1041, 1049 (Ala.Crim.App.2005).
According to Rule 32.3, Ala. R.Crim. P.: “The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.”
In Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003), we stated the following concerning a postconviction petitioner’s burden of pleading:
“ ‘Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.’ Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusion ‘which, if true, entitle[s] the petitioner to relief.’ Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App.1993). It is the allegation of facts in pleading which, if true, entitle a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala.R.Crim.P., to present evidence proving those alleged facts.”
913 So.2d at 1125. “The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis must be included in the petition itself.” Hyde v. State, 950 So.2d 344, 356 (Ala.Crim.App.2006).
We have also stated the following concerning pleading claims alleging ineffective assistance of counsel:
“To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must ‘identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,’ Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating ‘that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ 466 U.S. at 694, 104 S.Ct. 2052. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.”
Hyde v. State, 950 So.2d at 356.
I.
Bush first argues that we should vacate his death sentence because the judge in imposing the death penalty disregarded the jury’s unanimous recommendation that Bush be sentenced to life imprisonment without the possibility of parole. Specifically, he asserts that the cases of Ex parte Carroll, 852 So.2d 833 (Ala.2002), *128 and Ex parte Tomlin, 909 So.2d 283 (Ala.2003), require that his death sentence be vacated. He contends that the circuit court failed to give the jury’s recommendation the weight that recommendation was entitled to, that in overriding the jury’s recommendation the court did not rely on evidence that was not considered by the jury, and that the court failed to explain its decision to disregard the jury’s recommendation.[2] The record shows that in October 2003, Bush filed a motion for resentencing pursuant to the Supreme Court’s decisions in Carroll and Tomlin. The State responded that the circuit court could not apply those cases retroactively to Bush’s case because his case was final at the time the decisions were released. Apparently, the circuit court treated this motion as an amendment to Bush’s Rule 32 petition and denied the motion to resentence.
Section 13A-5-47(e), Ala.Code 1975, commonly referred to as Alabama’s judicial-override statute, states:
“In deciding upon the sentence, the trial court shall determine whether the aggravating circumstances it finds to exist outweigh the mitigating circumstances it finds to exist, and in doing so the trial court shall consider the recommendation of the jury contained in its advisory verdict, unless such a verdict has been waived pursuant to Section 13A-5-46(a) or Section 13A-5^6(g). While the jury’s recommendation concerning sentence shall be given consideration, it is not binding upon the court.”
The State argues that Carroll and Tomlin should not be applied retroactively to Bush’s case because his case is on collateral review. It asserts that the Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), standard — new rule can be applied retroactively to cases on collateral review only if rule forbids criminal punishment of certain primary conduct or prohibits a certain category of punishment or announces a watershed rule implicating fundamental fairness of criminal proceeding — cannot be satisfied because neither Carroll nor Tomlin announced a watershed rule of criminal procedure. It asserts that before Carroll was released the sentencing court was required to give consideration to the jury’s recommendation. ,
The Alabama Supreme Court in Ex parte Carroll stated the following concerning § 13A-5-47(e), Ala.Code 1975:
“We take this opportunity to further explain the effect of a jury’s recommendation of life imprisonment without the possibility of parole. Such a recommendation is to be treated as a mitigating circumstance. The weight to be given that mitigating circumstance should depend upon the number of jurors recommending a sentence of life imprisonment without parole, and also upon the strength of the factual basis for such a recommendation in the form of information known to the jury, such as conflicting evidence concerning the identity of the ‘triggerman’ or a recommendation of leniency by the victim’s family; the jury’s recommendation may be overridden based upon information known only to the trial court and not to the jury, when such information can properly be used to undermine a mitigating circumstance.
[[Image here]]
“ ‘Given the jury’s recommendation of life imprisonment without parole; the recommendation of the victim’s family that the defendant be sentenced to life imprisonment without parole; the fact that the defendant *129 was 17 years old when he committed the crime; and the circumstances of the crime (particularly that the defendant made no attempt to kill the witnesses to the crime), ... the sentence of death is excessive and disproportionate.’
“[Ex parte Carroll,] 852 So.2d [821] at 828[ (Ala. 2001) ] (Houston, J., concurring in part and dissenting in part). Because of Carroll’s age at the time of the offense, his lack of a significant criminal history, and the recommendation of the victim’s family that he be sentenced to life imprisonment without parole, the jury’s 10-2 recommendation that he not be sentenced to death tips the scales in favor of following the jury’s recommendation. We therefore reverse the judgment of the Court of Criminal Appeals as to Carroll’s sentence and remand the case for that court to instruct the trial court to resentence Carroll following the jury’s recommendation of life imprisonment without the possibility of parole.”
852 So.2d at 836-87.
The next year in Ex parte Tomlin, the Alabama Supreme Court revisited § 13A-5-47(e), Ala.Code 1975, and stated:
“‘[T]he death penalty should be carried out only after this Court has found it appropriate to do so by independently weighing the aggravating and mitigating circumstances.’ Ex parte Hays, 518 So.2d 768, 780 (Ala.1986) (opinion on rehearing). Therefore, while the trial court, acting without the guidance offered by Carroll, gave ‘serious consideration to the unanimous recommendation of the jury for life [imprisonment] without parole,’ we are compelled to treat the jury’s recommendation as a mitigating circumstance. Indeed, we must give that mitigating circumstance great weight.
“‘The weight to be given [a jury’s recommendation of life imprisonment without the possibility of parole] should depend upon the number of jurors recommending a sentence of life imprisonment without parole.’ [Ex parte ] Carroll, 852 So.2d [833] at 836 [ (Ala.2002) ]. In Carroll, we found that a jury’s 10-2 vote for a sentence of life imprisonment without the possibility of parole demonstrated ‘overwhelming support’ of such a sentence. 852 So.2d at 837. Therefore, it is only logical to conclude that a unanimous recommendation like the one here provides even more ‘overwhelming support’ of such a sentence and, therefore, must be afforded great weight.
[[Image here]]
“ ‘[T]he jury’s recommendation [of life imprisonment without the possibility of parole] may be overridden based upon information known only to the trial court and not to the jury, when such information can properly be used to undermine a mitigating circumstance.’ Carroll, 852 So.2d at 836. Here, the trial court overrode the jury’s recommendation, because ‘[t]he other perpetrator in this crime, John Ronald Daniels, was convicted of the capital offense of first degree murder of the same two people and [was] sentenced to death.’ Although the jury was not aware of Daniels’s sentence, his sentence cannot properly be used to undermine a mitigating circumstance.”
909 So.2d at 286-87.
Recently, this Court addressed whether Carroll and Tomlin should be applied retroactively to cases that were final on direct appeal but were on collateral review when those decisions were announced by the Alabama Supreme Court. See Ferguson v. State, 13 So.3d 418 (Ala.Crim.App.2008). In Ferguson we stated:
*130 “In neither Carroll nor Tomlin did the Alabama Supreme Court give any indication that those decisions were to be applied retroactively to all cases, even those cases that were final when the decisions in Carroll and Tomlin were announced. These decisions were applied to all cases that were currently pending on direct appeal. See Ex parte Mathis, 594 So.2d 692 (Ala.1991).
“The Alabama Supreme Court in Ex parte Harris, 947 So.2d 1139 (Ala.2005), recognizing that cases on collateral review are in a different procedural posture than cases pending on direct appeal when a judicial decision is announced, adopted the Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), standard and stated:
“ ‘In Teague v. Lane, 489 U.S. 288, 304, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the United States Supreme Court restated its reasons for applying its most current interpretation of federal constitutional law to only those cases that are still subject to that Court’s direct review, either on certio-rari-review of state-court proceedings affirming a judgment of conviction on direct appeal or directly from a United States Circuit Court of Appeals:
“ ‘ “In Griffith v. Kentucky, 479 U.S. 314[, 107 S.Ct. 708, 93 L.Ed.2d 649] (1987), we rejected as unprincipled and inequitable the Linkletter [w. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965),] standard for cases pending on direct review at the time a new rule is announced, and adopted the first part of the retroactivity approach advocated by Justice Harlan [in Mackey v. United States, 401 U.S. 667, 675, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in judgments in part and dissenting in part); and Desist v. United States, 394 U.S. 244, 256, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting) ]. We agreed with Justice Harlan that ‘failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication.’ 479 U.S., at 322. We gave two reasons for our decision. First, because we can only promulgate new rules in specific cases and cannot possibly decide all cases in which review is sought, ‘the integrity of judicial review' requires the application of the new rule to ‘all similar cases pending on direct review.’ Id., at 323, We quoted approvingly from Justice Harlan’s separate opinion in Mackey, supra, 401 U.S., at 679:
“ ““ “If we do not resolve all cases before us on direct review in light of our best understanding of governing constitutional principles, it is difficult to see why we should so adjudicate any case at all .... In truth, the Court’s assertion of power to disregard current law in adjudicating cases before us that have not already run the full course of appellate review is quite simply an assertion that our constitutional function is not one of adjudication but in effect of legislation.”’ 479 U.S., at 323.”
“ ‘(Emphasis added.) Thus, the United States Supreme Court has determined that, as a judicial body, it must consider its most current interpretation of federal constitutional law in disposing of cases arising from direct review, as opposed to collateral review of a postconviction petition, i.e., it considers its most current interpretation in cases petitioning for the writ of certiorari to the lower appellate court *131 seeking review of the affirmance of a conviction by such court on direct appeal. That is precisely what this Court did when we decided Harris’s Batson [v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986),] claim on direct appeal from the judgment of conviction based on Harrell [v. State, 571 So.2d 1270 (Ala.1990)], which was our most current interpretation of what federal constitutional law required at the time.
“ ‘The United States Supreme Court continued in Teague:
“ ‘ “Second, because ‘selective application of new rules violates the principle of treating similarly situated defendants the same,’ we refused to continue to tolerate the inequity that resulted from not applying new rules retroactively to defendants whose cases had not yet become final. [Griffith v. Kentucky, 479 U.S. 314], at 323-324[, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) ] (citing Desist [v. United States ], 394 U.S. [244], at 258-259[, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969)] (Harlan, J., dissenting)).” ’
“‘489 U.S. at 304, 109 S.Ct. 1060. The “similarly situated defendants” the United States Supreme Court considers itself bound to treat the same are defendants who can still come before that Court on certiorari review of an appeal from a final judgment of conviction or from a decision of a United States Court of Appeals. The term does not include petitioners whose judgments of conviction have previously been affirmed or have otherwise become final and who are now collaterally attacking the conviction in a postconviction proceeding. In fact, the United States Supreme Court refused, in Allen v. Hardy, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), to apply Batson retroactively to a petitioner appearing before that Court on collateral review of a previous final judgment of conviction. The procedural posture of the postconviction petitioner in relation to the United States Supreme Court in Allen is analogous to Harris’s posture in relation to this Court in the instant case. Neither the United States Supreme Court’s rationale in Griffith for applying its most current interpretation of federal constitutional law to cases pending before it, nor the definition of a “final” case in Griffith compels the application of Thomas to Harris’s Bat-son claim. Rather, for purposes of Harris’s argument that Thomas applies, we conclude that her conviction was final when this Court decided Thomas. Therefore, Harris’s case is distinguishable from those cases she cites indicating that Thomas should apply retroactively only to convictions not yet final.’
“947 So.2d at 1145-46. See also Ex parte Love, 507 So.2d 979 (Ala.1987) (Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), does not apply retroactively to cases on collateral review); Hunt v. State, 940 So.2d 1041 (Ala.Crim.App.2005) (Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), does not apply retroactively to cases on collateral review); McWilliams v. State, 897 So.2d 437 (Ala.Crim.App.2004) (Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), does not apply retroactively to cases on collateral review); and Matthew R. Doherty, The Reluctance Towards Retroactivity: The Retroactive Application of Laws in Death Penalty Collateral Review Cases, 39 Val.U.L.Rev. 445 (2004). Cf. Duncan v. State, 925 So.2d 245 (Ala.Crim.App.2005) *132 (Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), and Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), apply retroactively to cases on collateral review because they meet the Teague v. Lane test.)
“Before a judicial decision is applied retroactively to cases on collateral review it must meet one of two criteria:
“ ‘First, a new rule should be applied retroactively if it places “certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe.” Mackey [v. United States ], 401 U.S. [667], at 692, 91 S.Ct. 1160, 28 L.Ed.2d 404 [ (1971) ]. Second, a new rule should be applied retroactively if it requires the observance of “those procedures that ... are ‘implicit in the concept of ordered liberty.’ ” Id., at 693, 91 S.Ct., at 1180 (quoting Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 [L.Ed.] 288 (1937) (Cardozo, J.)).’
“489 U.S. at 307, 109 S.Ct. 1060. The Supreme Court noted the difficulty in applying a new rule of law to a collateral proceeding:
“ ‘The “costs imposed upon the State[s] by retroactive application of new rules of constitutional law on ha-beas corpus ... generally far outweigh the benefits of this application.” [Solem v.] Stumes, 465 U.S. [638], at 654, 104 S.Ct. [1338], at 1347 [ (1984) ] (Powell, J., concurring in judgment). In many ways the application of new rules to cases on collateral review may be more intrusive than the enjoining of criminal prosecutions, cf. Younger v. Harris, 401 U.S. 37, 43-54, 91 S.Ct. 746, 750-755, 27 L.Ed.2d 669 (1971), for it continually forces the State to marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards.’
“489 U.S. at 310, 109 S.Ct. 1060.
“Though we are doubtful that Carroll or Tomlin apply retroactively to cases on collateral review, we believe that this question is best left to the Alabama Supreme Court.”
13 So.3d at 429-31. After we released Ferguson, Ferguson petitioned for a writ of certiorari before the Alabama Supreme Court. The Supreme Court denied certiorari review. Ex parte Ferguson (Ms. 1071249, January 16, 2009).
We hold that Carroll and Tomlin do not apply retroactively to cases on collateral review. Thus, the circuit court did not err in denying Bush’s motion to resentenee him to life imprisonment without the possibility of parole.[3]
II.
Bush argues that the circuit court erred in dismissing several of his ineffeetive-as-sistance-of-counsel claims without allowing him to present evidence in support of those claims.
As we stated above:
“To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must ‘identify the [specific] acts or omissions of counsel that are alleged not to have been the *133 result of reasonable professional judgment,’ Strickland, v. Washington, 466 U.S. 668, 690,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating ‘that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ 466 U.S. at 694, 104 S.Ct. 2052. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.”
Hyde v. State, 950 So.2d at 356.
A.
First, Bush asserts that the circuit court erred in dismissing his claims that counsel was ineffective for failing to present “significant” mitigating evidence at the sentencing hearing before the circuit court. Specifically, he argues that counsel failed to present evidence concerning Bush’s disadvantaged background, his low intelligence, and his dysfunctional family.[4] He also asserts that counsel did not prepare, investigate, or talk with Bush’s family members.
The circuit court, when dismissing this claim, stated:
“[Pjetitioner alleges that trial counsel was ineffective for failing to present certain mitigating evidence during the sentencing hearing. Matters relating to mitigating circumstances were raised by appellate counsel and addressed on appeal. In Bush v. State, 695 So.2d 70 (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.1997), the Court of Criminal Appeals reviewed these issues under the plain error rule and found that the failure or refusal to consider certain mitigating factors did not rise to the level of plain error.
“In a recent case, Williams v. State, [783 So.2d 108 (Ala.Crim.App.2000),] the Court held that such a finding under the plain error standard on direct appeal constitutes a finding of no prejudice under the test for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).
“Furthermore, the procedural bars of Rule 32 apply in death penalty cases. Williams, supra; State v. Tarver, 629 So.2d 14 (Ala.Crim.App.1993). The Court having considered the matter is of the opinion that these claims would be procedurally barred pursuant to Rule 32 and that there is no prejudice under the Strickland test.”
(C.R. 325-26.)
The circuit court relied on Williams v. State, 783 So.2d 108 (Ala.Crim.App.2000), to procedurally bar these claims. In Williams we held that a finding of no plain error on direct appeal precluded a finding of prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, our decision in Williams was subsequently overruled by the Alabama Supreme Court in Ex parte Taylor, 10 So.3d 1075 (Ala.2005). The Supreme Court in Taylor stated:
“Although it may be the rare case in which the application of the plain-error test and the prejudice prong of the Strickland test will result in different outcomes, a determination on direct appeal that there has been no plain error does not automatically foreclose a determination of the existence of the prejudice required under Strickland to sus *134 tain a claim of ineffective assistance of counsel. In determining whether to grant a Rule 32 petitioner relief on an ineffective-assistance claim, a court must examine both the plain-error and prejudice standards of review.”
10 So.3d at 1078. Here, the circuit court dismissed these claims on March 8, 2001, several years before the Alabama Supreme Court overruled Williams in 2005.
However, when reviewing a circuit court’s rulings made in a postconviction petition, we may affirm a ruling if it is correct for any reason. As we stated in McNabb v. State, 991 So.2d 313 (Ala.Crim.App.2007):
“ ‘An appellee can defend the trial court’s ruling with an argument not raised below, for this Court “will affirm the judgment appealed from if supported on any valid legal ground.” Tucker v. Nichols, 431 So.2d 1263, 1265 (Ala.1983). There is a rather obvious fundamental difference in upholding the trial court’s judgment and reversing it; this Court will not reverse the trial court’s judgment on a ground raised for the first time on appeal, Costarides v. Miller, 374 So.2d 1335 (Ala.1979), even though it affirms judgments on bases not asserted in the trial court, Bank of the Southeast v. Koslin, 380 So.2d 826 (Ala.1980). This difference is predicated on the “long-standing, well-established rule that [in order to secure a reversal] the appellant has an affirmative duty of showing error upon the record.” Tucker v. Nichols, supra, at 1264.’
“Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala.1988) (emphasis on ‘affirms’ original; other emphasis added). See also Laster v. Norfolk Southern Ry., [Ms. 1050532, Jan. 5, 2007] — So.2d — (Ala.2007);[5] and Blackmon v. Brazil, 895 So.2d 900 (Ala.2004). In Liberty National Life Insurance Co. v. University of Alabama Health Senices Foundation, P.C., 881 So.2d 1013 (Ala.2003), the Alabama Supreme Court identified certain exceptions to the application of the affirm-for-any-reason rule, stating:
“ ‘Nonetheless, this Court will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court. Ex parte Ryals, 773 So.2d 1011 (Ala.2000), citing Ex parte Wiginton, 743 So.2d 1071 (Ala.1999), and Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala.1988). This rule fails in application only where due-process constraints require some notice at the trial level, which was omitted, of the basis that would otherwise support an affirmance, such as when a totally omitted affirmative defense might, if available for consideration, suffice to affirm a judgment, Ameriquest Mortgage Co. v. Bentley, 851 So.2d 458 (Ala.2002), or where a summary-judgment movant has not asserted before the trial court a failure of the nonmovant’s evidence on an element of a claim or defense and therefore has not shifted the burden of producing substantial evidence in support of that element, Rector v. Better Houses, Inc., 820 So.2d 75, 80 (Ala.2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323,106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and Kennedy v. *135 Western Sizzlin Corp., 857 So.2d 71 (Ala.2003)).’
“881 So.2d at 1020 (emphasis added).”
991 So.2d at 338-84. This Court has affirmed the denial of postconviction petitions when the postconviction court erroneously relied on Williams. See Davis v. State, 9 So.3d 539 (Ala.Crim.App.2008) (opinion after remand from the Alabama Supreme Court); Hunt v. State, 940 So.2d 1041 (Ala.Crim.App.2005).
Bush pleaded the following, in part, in regard to this claim:
“Trial counsel failed to present mitigating evidence to the court at the judicial sentencing hearing, including evidence about petitioner’s disadvantaged background and family life, his unusually low intelligence and learning disabilities, and other evidence that would have supported a case for life imprisonment without parole.
“Trial counsel should have presented evidence that Mr. Bush grew up in a very poor family with uneducated parents who were forced to work in the fields, picking cotton, and as domestic servants, in order to feed their eight children. Counsel could have presented evidence that Mr. Bush was raised by an alcoholic father who regularly beat him. Mr. Bush also suffered severe and frequent physical abuse at the hands of staff at a juvenile detention facility where he spent two formative years. Presentation of this evidence about Mr. Bush’s background and extreme deprivation could have supported a case for life imprisonment without parole. But for former counsel’s ineffective performance in this regard, there is a reasonable probability that the outcome of Mr. Bush’s trial would have been different.”
(C.R. 12-13.)[6]
Bush failed to plead sufficient facts to satisfy the requirements of Rule 32.3 and Rule 32.6(b), Ala. R.Crim. P. The Alabama Supreme Court in Moore v. State, 502 So.2d 819, 820-21 (Ala.1986), stated:
“It is well established that a [Rule 32] petition ... must contain more than mere naked allegations that a constitutional right has been denied. An evi-dentiary hearing on a ... petition is required only if the petition is ‘meritorious on its face.’ A petition is ‘meritorious on its face’ only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true.”
Bush did not identify any specific witnesses or evidence that counsel should have introduced to support this claim. Bush failed to meet his burden of pleading. See Rule 32.6(b), Ala. R.Crim. P.
Moreover, we are puzzled as to why Bush makes this assertion when Bush’s counsel on direct appeal argued that the circuit court erred in not considering “significant” mitigating evidence, which included Bush’s lack of education, his low IQ, his difficult childhood, his spiritual conversion, and his family relationships.
The record shows that during Bush’s sentencing hearing before the jury, counsel presented the testimony of Bush’s mother, his brother, his sister, and a family friend. Mary Bush, Bush’s mother, testified that Bush was the sixth , of eight *136 children, that he regularly attended church, and that he had recently “given his life to the Lord.” Eugene Bush, Bush’s brother, testified that Bush helped him stay out of trouble when he was growing up, that he helped him find his first job, and that Bush had a good relationship with God. Annie McGee, Bush’s sister, testified that the family was very close-knit, that Bush was never a bad person, that she was the second from the oldest of the children and helped with the younger children, that Bush did as he was told, and that Bush “had found Christ.” Ellen Dorsey, a family friend who lived near Bush when he was young, testified that Bush was always a good and quiet boy and that he had become “closer to the Lord” since his incarceration. The circuit court also had the benefit of the detailed presentence report.
On direct appeal we stated the following concerning Bush’s claim that the circuit court failed to consider significant mitigating evidence:
“The appellant contends that the trial court erred in refusing and/or failing to consider ‘significant’ mitigating evidence, both statutory and nonstatutory, in overriding the jury’s unanimous recommendation that he be sentenced to life imprisonment without the possibility of parole and in sentencing him to death. He lists this alleged evidence as follows: The fact that he was ‘significantly impaired and disturbed’ at the time he shot and killed Dominguez due to his use of ‘narcotic drugs’; his ‘minimal’ education and ‘unusually low intelligence’; his confession to the police and his expressed remorse for the killing; his difficult childhood; his study of technical subjects that enabled him to be gainfully employed for several years; his ‘model’ behavior during his years on death row; his spiritual conversion while on death row; his artwork; his family relationships; his worth as a human being; and the fact that his codefendant received a sentence of life imprisonment without parole sentence while the appellant received a death sentence. He contends that because of the trial court’s failure or refusal to consider these mitigating circumstances, he is entitled to a new sentencing hearing before the trial court where the allegedly mitigating circumstances will be properly considered and weighed.
“Although the trial court failed to find the existence of any enumerated statutory mitigating circumstance, if found the existence of several nonstatutory mitigating circumstances: that the appellant was a productive member of society, that he showed remorse for his crime while in prison, that his life is of value, the he had made a spiritual conversion during the last two years that has made a difference in his life, that he has done artwork, while in prison that reflects his worth as a human being, and that the jury recommended a sentence of life imprisonment without the possibility of parole by a unanimous vote.”
695 So.2d at 88-89. Clearly, counsel spoke with Bush’s family members — three of his family members testified at his trial. Also, counsel presented mitigating evidence about Bush’s background and family, and the circuit court found the existence of nonstatutory mitigating circumstances.[7]
The record also shows that Bush was evaluated by a psychologist before trial and that Bush’s IQ scores ranged from 69 *137 to 84. Bush also testified before the circuit court at the motion-to-suppress hearing. The circuit court had the unique opportunity of observing Bush throughout three trials. Also, at the Rule 32 hearing, Stephen Glassroth, Bush’s trial attorney testified that he did not remember a lot of specifics about the case because of the amount of time that had passed, but he was sure that if the psychologist’s testimony had been favorable to Bush he would have called the psychologist to testify.
“ ‘Prejudicial ineffective assistance of counsel under Strickland cannot be established on the general claim that additional witnesses should have been called in mitigation. See Briley v. Bass, 750 F.2d 1238, 1248 (4th Cir.1984); see also Bassette v. Thompson, 915 F.2d 932, 941 (4th Cir.1990). Rather, the deciding factor is whether additional witnesses would have made any difference in the mitigation phase of the trial.’ Smith v. Anderson, 104 F.Supp.2d 773, 809 (S.D.Ohio 2000), aff'd, 348 F.3d 177 (6th Cir.2003). ‘There has never been a case where additional witnesses could not have been called.’ State v. Tarver, 629 So.2d 14, 21 (Ala.Crim.App.1993).”
McWilliams v. State, 897 So.2d 437, 453 (Ala.Crim.App.2004), rev’d on other grounds in Ex parte Jenkins, 972 So.2d 159 (Ala.2005). For these reasons, we find that the circuit court did not err in dismissing these claims.
B.
Bush next argues that the circuit court erred in erroneously relying on Williams v. State to dismiss other ineffective-assistance-of-counsel claims.
Initially, we note that this section of Bush’s brief fails to comply with the requirements of Rule 28, Ala. R.App. P.
“It is well settled that ‘[rjecitation of allegations without eitation to any legal authority and without adequate recitation of the facts relied upon has been deemed a waiver of the arguments listed.’ Hamm v. State, 913 So.2d 460, 486 (Ala.Crim.App.2002). ‘An appellate court will consider only those issues properly delineated as such and will not search out errors which have not been properly preserved or assigned. This standard has been specifically applied to briefs containing general propositions devoid of delineation and support from authority or argument.’ Ex parte Riley, 464 So.2d 92, 94 (Ala.1985) (citations omitted).”
Franklin v. State, 23 So.3d 694, 703 (Ala.Crim.App.2008). Accordingly, we address only those claims that Bush specifically addresses, not the claims that are merely included in a “laundry list.”[8]
1.
Bush first asserts that the circuit court erred in dismissing his claim that his trial counsel was ineffective for failing to object to the court’s use of his 1970 robbery conviction as an aggravating circumstance pursuant to § 13A-5-49(2), Ala. Code 1975.[9] The circuit court found that the substantive claim had been addressed on direct appeal; thus, the ineffective-assistance claim related to the same issue was due to be dismissed.
Bush pleaded the following in his post-conviction petition concerning this claim:
“Trial counsel failed to object to the state’s reliance on Mr. Bush’s prior 1970 *138 robbery conviction to prove the aggravating circumstance that ‘the defendant was previously convicted of another capital offense or a felony involving the use or threat of violence to the person.’ Counsel failed to object to admission of the court record offered to prove the prior conviction on the ground that the plea was not knowing and voluntary and was entered into without the assistance of counsel; failed to present evidence to prove that the conviction was invalid; and failed to challenge the conviction at any point prior, to trial, thus depriving Mr. Bush of his right to effective assistance of counsel. (R. 909); see Bush v. State, 695 So.2d 70, 90-91 (Ala.Crim.App.1995). Had counsel investigated and proved that the prior conviction was not lawfully obtained, it could not have been used in aggravation against petitioner, and the outcome of the trial court sentencing would have been different.”
(C.R. 239-40.)
First, this claim was correctly dismissed because Bush failed to meet his burden of pleading sufficient facts to support this claim. Bush failed to indicate in his pleading why the 1970 guilty plea was involuntary. Bush alleges mere conclusions without any factual support. Thus, this claim was correctly dismissed based on Rule 32.6(b), Ala. R.Crim. P.[10]
Moreover, on direct appeal' we stated the following concerning the underlying substantive issue:
“[Bush] contends that the trial court erred in relying on his 1970 robbery conviction to prove the aggravating circumstance that ‘[t]he defendant was previously convicted of another capital offense or a felony involving the use or threat of violence to the person, § 13A-5-49(2).’ He argues that the state failed to prove that the guilty plea underlying the conviction was knowingly and voluntarily entered and that' he was represented by counsel at the guilty plea proceedings.
[[Image here]]
“Section 13A-5-10.1, which pertains to the proof of prior felony convictions for enhancement under the Habitual Felony Offender Act, provides, ‘Certified copies of the case action summary sheets, docket sheets, or other records of the court are admissible for the purpose of proving prior convictions of a crime, if the prior conviction is otherwise admissible under the laws of this state.’ This has also been recognized as a proper method for proving a prior conviction to establish the existence of an ággravating circumstance in a capital case. See Jones v. State, 520 So.2d 543 (Ala.Cr.App.1984), aff'd, 520 So.2d 553 (Ala.), cert. denied, 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988); Cosby v. State, 627 So.2d 1059 (Ala.Cr.App.1993).
“[Bush’s] contention that the court record of the 1970 robbery conviction fails to show that he was represented by counsel is without merit. The docket sheet shows that [Bush] was represented by H. Perdue. Docket sheet entries recite that [Bush] was represented by counsel at arraignment and at the guilty plea and sentencing proceedings. If the court document indicates that a defendant was represented by counsel, it is presumed that counsel was present at all critical stages of the proceedings. Section 13A-5-10.1(c).
*139 “[Bush’s] contention that the trial court should not have relied on his prior conviction because the state failed to prove that his guilty plea was knowingly and voluntarily entered is, likewise, without merit. Such an assertion amounts to a collateral attack on his 1970 robbery conviction. The proper forum for attacking the validity of the prior conviction would be by Ala.R.Cr.P. 32 post-conviction petition in the court of conviction. Ex parte Madden, 602 So.2d 1192 (Ala.1991); Johnson v. State, 541 So.2d 1112 (Ala.Cr.App.1989). Here, the trial court could not have looked beyond the facial validity of the conviction. In this case, the judgment of the Montgomery Circuit Court appears valid upon its face. It reflects that the circuit court had jurisdiction of the offense charged and the defendant, William Edward Bush. Proof of the conviction and proof that [Bush] was represented by counsel at the time of the conviction were all that was required. In our opinion, the state met this burden and proved the conviction beyond a reasonable doubt. We find no plain error in these contentions.”
695 So.2d at 90-91. Because the substantive issue that supported Bush’s ineffective-assistanee-of-counsel claim had no merit, counsel could not be ineffective for failing to challenge the prior conviction on the ground that the plea was involuntary. See Smith v. State, 71 So.3d 12 (Ala.Crim.App.2008). Therefore, this claim was correctly dismissed.
2.
Bush next asserts that the circuit court erred in dismissing his claim that counsel was ineffective for failing to “object properly” to the court’s application of the aggravating circumstance that the murder was especially heinous, atrocious, or cruel as compared to other capital murders.
Bush pleaded the following: “Trial counsel failed to represent their client effectively when they did not object properly when the prosecution, after announcing that it would not rely on the heinousness aggravating circumstance, did proceed on that factor in urging death for Mr. Bush.” (C.R. 18.)
Initially, Bush failed to meet his burden of pleading sufficient facts in support of this claim. See Rule 32.6(b), Ala. R.Crim. P. Bush ■ did not allege what objection counsel could or should have made to the application of the aggravating circumstance that the offense was especially heinous, atrocious, or cruel.
Moreover, in dismissing this claim the circuit court stated:
“[Bush] alleges that trial counsel did not properly object to the State proceeding on the heinousness as an aggravating circumstance. Trial counsel moved prior to trial to prohibit the State from using heinousness as an aggravating factor. The trial transcript also shows that trial counsel objected to the trial court instructing the jury on the offense being heinous, atrocious and cruel prior to the sentencing phase and also argued this issue again during the sentencing hearing before the trial court. Furthermore, this issue was raised on appeal and addressed by the appellate court. In addition, the Court of Criminal Appeals held that ‘an execution-type killing is itself especially heinous, atrocious or cruel as compared to other capital offenses.’ Bush [v. State, 695 So.2d 70, 88 (Ala.Crim.App.1995) ]. This Court is of the opinion this claim is due to be dismissed.”
(C.R. 328-29.) On direct appeal, we specifically found that the murder in this case was especially heinous, atrocious, or cruel. *140 Counsel cannot be ineffective for failing to raise an issue that has no merit. See Smith, supra.
3.
Bush next asserts that the circuit court erred in dismissing his claim that counsel erred in not raising “proper” argument concerning the judicial override.
Bush alleged the following in his petition: “trial counsel provided ineffective assistance when they failed to present evidence and legal argument in support of their contention that the use of the override in Alabama was. unconstitutional.” (C.R. 21.) Bush failed to identify what evidence counsel should have presented. Thus, he failed to meet his burden of pleading in regard to this claim and the claim was correctly dismissed. See Rule 32.6(b), Ala. R.Crim. P.
Moreover, the record shows that counsel objected at trial and argued that Alabama’s judicial override is unconstitutional. In our opinion on direct appeal, we stated:
“[Bush’s] argument that the Alabama Death Penalty Act permits a trial court to impose a death sentence without any standards to guide its discretion is simply not true and ignores the requirements of the judicial override provision.
[[Image here]]
“... We are convinced, after reviewing the record in this case, that the trial court complied with the sentencing scheme of Alabama’s death penalty statute and that the sentence that it imposed, overriding the jury’s verdict, met constitutional requirements and was not arbitrary, discriminatory, or fundamentally unfair.”
695 So.2d at 93-94. The circuit court did not err in dismissing this claim.
4.
Bush next asserts that the circuit court erred in dismissing his claim that counsel was ineffective for failing to object to improper information in the presentence report. Specifically he alleges that the report included juvenile adjudications that should not have been considered, Freeman v. State, 555 So.2d 196 (Ala.Crim.App.1988), and “unwarned, uncounseled statements petitioner made to the state officer.” The exact statements Bush finds objectionable are not identified in his brief.
The circuit court dismissed this claim because the substantive issue had been raised and addressed on direct appeal. On direct appeal we stated:
“The presentence report was prepared and filed in accordance with ■§ 13A-5-5; § 13A-5-47(b)[, Ala.Code 1975]; and Rule 26.3, Ala.R.Cr.P., and was considered by the trial court in determining [Bush’s] sentence. It shows two juvenile adjudications involving [Bush] in 1965 and in 1968. [Bush] cites Freeman v. State, 555 So.2d 196, 212 (Ala.Cr.App.1988), aff'd, 555 So.2d 215 (Ala.1989), cert. denied, 496 U.S. 912, 110 S.Ct. 2604, 110 L.Ed.2d 284 (1990), to support his contention. However, his reliance on Freeman is misplaced. While the Freeman court correctly held that juvenile adjudications are not convictions or criminal in nature and cannot be considered to negate the statutory mitigating circumstance that a defendant has no significant history of prior criminal activity, § 13A-5-51(l), it did not address aggravating circumstances. In finding that this mitigating circumstance did not exist, the trial court did not rely on the juvenile adjudications, but rather correctly found that [Bush] had a significant history of prior criminal activity in that he had been previously convicted of robbery. (The presen- *141 fence report shows that [Bush] also had prior convictions for larceny and for a violation of the federal firearms act.)
“A trial court may consider only those aggravating circumstances listed in § 13A-5-49[, Ala.Code 1975,] in fixing the death penalty. Clisby v. State, 456 So.2d 99 (Ala.Cr.App.1983); Berard v. State, 402 So.2d 1044 (Ala.Cr.App.1981). In this case, the trial court found the existence of three statutory aggravating circumstances: (1) that [Bush] had previously been convicted of the offense of robbery in March 1970; (2) that the capital offense was committed while [Bush] was engaged in or was an accomplice in the commission of a robbery; and (3) that the capital offense was especially heinous, atrocious, or cruel when compared to other capital offenses. There is nothing in the record or in the sentencing order from which one could even infer that the trial court considered the appellant’s juvenile record, as shown in the presentence report, as nonstatuto-ry aggravating evidence. We, thus, find no merit to [Bush’s] contention. In the absence of some evidence to the contrary, we must presume that the trial court knew the law and that it correctly applied it in making its decision. Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990); Hutcherson v. State, 677 So.2d 1174 (Ala.Cr.App.1994).
“We are convinced after reviewing the record that the trial court’s use of the presentence report in determining [Bush’s] sentence was consistent with § 13A-5-45(d), which states:
“ ‘Any evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements. This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the State of Alabama.’
“[Bush] also contends that the pre-sentence report includes ‘damaging1 statements made by him during an ‘unwarned, uncounseled presentence interview’ with the probation officer who prepared the report. He does not identify which statements he considers damaging. The cases of Powell v. Texas, 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989), and Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), relied upon by [Bush], are not applicable to this presentence report. In those cases, the Court held that a capital defendant’s Fifth Amendment right against compelled self-incrimination precluded the state from subjecting him to a psychiatric examination concerning future dangerousness without first informing him (1) that he has a right to remain silent and (2) that anything he says can be used against him at a sentencing proceeding, and further that once a capital defendant is [formally] charged, the Sixth Amendment right to counsel precludes such a psychiatric examination without first notifying counsel that the examination will encompass an assessment of future dangerousness. It is apparent from the presentence report that [Bush] was interviewed by the preparer of the report and that the information given was of a general background nature typically found of presen-tence reports. The presentence report shows that no psychological reports were considered, and it is readily apparent that no questions were asked by the interviewer and no responses made by [Bush] that would bear in any way upon *142 the question of [Bush’s] future dangerousness. The report is silent in this regard. It can only be concluded that future dangerousness was not a subject of the interview. We note that in the interview the appellant denied his guilt.
“In conclusion, we have searched the presentence report and we find no improper information in it and certainly no damaging statements of the type referred to by [Bush] and discussed in the cases cited. It meets the requirements of the applicable statutes and rule.
“[Bush] did not object to the presen-tence report when he was afforded an opportunity to do so at trial; he raises these objections for the first time on appeal. We have, therefore, reviewed his contentions under the plain error rule. We find no merit in these contentions, and certainly no plain error.”
695 So.2d at 92-93. The underlying substantive issue had no merit; thus, the circuit court did not err in dismissing this claim. See Smith, supra.
5.
Bush next asserts that the circuit court erred in dismissing his claim of racial bias in the imposition of the death penalty. He asserts that the circuit court erroneously concluded that this issue was barred because the jury voted for life imprisonment without the possibility of parole.
Bush pleaded the following:
“Trial counsel erred in failing to object to the racial bias in the use of the death penalty in Montgomery, County, in Alabama, and as applied against William Bush, a black man, for the murder of a white man. Had counsel objected and presented evidence to show that race plays a role in deciding who is subject to the death penalty in Alabama and played a role in this case, the result of the proceedings would have been different.”
(C.R. 22.) Again, Bush failed to meet his burden of pleading — he failed to allege any factual support for this assertion. Thus, this claim was correctly dismissed. See Rule 32.6(b), Ala. R.Crim. P.
C.
Bush next argues that the circuit court erred in dismissing other claims in his Rule 32 petition based on this Court’s opinion on direct appeal.
1.
First, Bush asserts that the circuit court erred in dismissing his claim that counsel was ineffective for failing to “present adequate evidence and argument” in support of his motion asking the trial judge to recuse himself. Specifically, he pleaded the following:
“Had counsel presented additional evidence and argument — including evidence detailing the animosity between the court and counsel that had arisen due to counsel’s motions and mandamus of the judge regarding a continuance— the outcome of Mr. Bush’s trial and sentencing would have been different.”
(C.R. 233.) Clearly, Bush failed to allege specific facts to support this claim; therefore, Bush failed to meet his burden of pleading. Rule 32.6(b), Ala. R.Crim. P.
Moreover, the circuit court stated the following when dismissing this claim:
“The trial transcript shows that there were oral motions to recuse during the trial and during the sentencing hearing. In addition, there was also a written motion to recuse.
“Furthermore, the trial court had requested an opinion from the Judicial Inquiry Commission and was informed that under the circumstances he was not required to recuse. Moreover, the issue *143 of recusal was raised by appellate counsel and addressed by the appellate court. Having considered the matter, the Court is also of the opinion that this claim is due to be dismissed.”
(C.R. 326.) On direct appeal, we stated: “Contrary to [Bush’s] assertion, we find no evidence that the trial judge in this case was personally biased toward the appellant.” 695 So.2d at 95. The substantive claim has no merit; therefore, counsel was not ineffective for failing to argue this issue more effectively. See Smith, supra.
2.
Bush next asserts that the circuit court erred in dismissing his claim that counsel was ineffective for failing to investigate the State’s ballistic expert, Lonnie Harden.
The circuit court stated the following when dismissing this claim:
“The trial transcript shows that Lonnie Harden was the ballistics expert. Harden testified that he had four college degrees from three universities, that he had been a forensic ballistics expert since 1970 and that he is one of twenty six (26) graduates in the world of the only certified Firearm and Tool Mark Examiners School in the world.
“As previously stated, the appellate court addressed issues relating to the ballistics expert and in its opinion stated that ‘the ballistics evidence was neither critical nor subject to varying expert opinion’ under the circumstances.”
(C.R. 327-28.)
On direct appeal we found that the ballistic expert’s testimony was not “critical” because of all the other evidence the State presented against Bush. Therefore, any failure to challenge the ballistic’s expert was at most harmless. Thus, Bush could establish no prejudice. “Harmless error does not rise to the level of the prejudice required to satisfy the Strickland [v. Washington, 466 U.S. 668 (1984),] test.” Gaddy v. State, 952 So.2d 1149, 1160 (Ala.Crim.App.2006).
III.
Bush next argues that we cannot affirm the circuit court’s denial of Bush’s Rule 32 petition with only half of the record on appeal. He asserts that the record is “woefully inadequate.”
Judge Joseph Phelps sentenced Bush to death, but he retired before the postcon-viction proceedings were initiated. Judge Sally Greenhaw presided over and denied the Rule 32 petition. When Judge Green-haw retired from the bench the case was assigned to Judge Truman Hobbs. Judge Hobbs disposed of the motions to supplement the record.
The original record sent to this Court was five volumes. In September 2004, Bush filed his first motion to supplement the record. The record was supplemented with an additional seven volumes. Bush filed a second motion in October 2004. That motion was denied. In November 2004, Bush filed a third motion to supplement and that motion was denied. Bush moved to reconsider, and the record was supplemented with one additional volume. Bush then filed motions to supplement in June 2006 and July 2006. Those motions were denied. Bush asserts that the following hearings are still missing from the record.
The certified record that was filed with this Court shows the following:
July 8, 1999. An order issued by Judge Greenhaw shows that Judge Greenhaw set the matter for a status conference hearing on July 8, 1999. Before the hearing Bush moved for discovery of the prosecution files. On July 16, 1999, Judge Greenhaw issued an order granting Bush discovery of *144 “materials in the possession of the Montgomery County District Attorney’s Office,”
September 15, 1999. The record' contains an order issued by Judge Greenhaw setting the case for a status and discovery hearing on September 15, 1999. The record also contains a letter that states: “The Court held a status conference on September 15, 1999, where some of these pending matters were argued by both parties. There have been no rulings, however, on any of these pending issues.” (C.R. 212.)[11]
October 5, 20Q0. The record contains an order dated October 5, 2000, issued by Judge Greenhaw dismissing several claims and directing Bush to file amended pleadings. On that date, Judge Greenhaw also set the case for a status hearing on February 20, 2001.
February 7, 2001. The record contains a letter from defense counsel to Judge Greenhaw that contains the following reference: “We therefore look forward to the scheduled conference call with the Court to be placed by [the assistant attorney general] at 3:00 this afternoon.” (Supplemental record, vol. 1, p. 105.) It appears that the call addressed the motions that were identified in the letter. The letter also states that it was defense counsel’s intent to call the court’s attention to motions that were still pending and the possibility of continuing the evidentiary hearing. . .
February 20, 2001. The February 20, 2001, hearing is contained in the record. We find no indication that part of this hearing is missing. This hearing addressed discovery matters.
April 17, 2001. A hearing held on April 17, 2001, is contained in the record. This hearing addressed discovery.
July 8, 2002. On July 8, 2002, the circuit court issued an order setting a briefing schedule on the applicability to Bush’s case of the United States Supreme Court’s decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Several months were devoted to briefing that issue.
December 2 and 20, 2002. The record indicates that on December 2, 2002, a conference call was conducted concerning discovery and that the December 20, 2002, hearing concerned discovery. On December 30, 2002, Judge Greenhaw issued five discovery orders granting discovery motions filed by Bush and one order dismissing two of the claims in the postconviction petition.
It is uncontested that all the orders issued by the circuit court and all the motions filed by both Bush and the State are contained in the record that was certified to this Court. After each identified hearing date, orders were issued by the circuit court. Those orders are all contained in the record.
The Alabama Supreme Court has declined to adopt á “mechanistic approach” in situations where the record is incomplete for purposes of appeal. See Ex parte Godbolt, 546 So.2d 991 (Ala.1987).
“Where the transcript or record is incomplete, two rules have evolved. The first applies to the situation where the appellant is represented on appeal by the same counsel that represented him at trial. In that case, the failure to supply a complete record is not error per se and will not work a reversal absent a specific showing of prejudice. In other words, in such a case, the appellant must show that failure to record *145 and preserve the specific portion of the trial proceedings complained of visits a hardship upon him and prejudices his appeal. The second applies to the situation where the appellant is represented by new counsel on appeal. When he is represented on appeal by counsel other than the attorney at trial, the absence of a substantial and significant portion of the record, even absent any showing of specific prejudice or error, is sufficient to warrant reversal. Ex parte Godbolt, [546 So.2d 991 (Ala.1987),] adopting the rule established in United States v. Selva, 559 F.2d 1803 (5th Cir.1977). ‘We do not advocate a mechanistic approach to situations involving the absence of a complete transcript of the trial proceedings. We must, however, be able to conclude affirmatively that no substantial rights of the appellant have been adversely affected by the omissions from the transcript.’ Ex parte Godbolt, 546 So.2d at 997, quoting with approval, United States v. Selva, 559 F.2d at 1305-06.”
Ingram v. State, 779 So.2d 1225, 1280-81 (Ala.Crim.App.1999).
Here, throughout the lengthy Rule 32 proceedings in the circuit court and before this Court, Bush was represented by the same attorney, Ruth Friedman. Because Bush was represented by the same attorney in the circuit court and on appeal, Bush must “make a specific showing of prejudice resulting from the failure to record and preserve the proceedings he claims should have been included in the record on appeal.” See Hodges v. State, 926 So.2d 1060, 1066 (Ala.Crim.App.2005). Bush failed to make any specific allegations as to how he was prejudiced by the incomplete record.
In Pierce v. State, 851 So.2d 558 (Ala.Crim.App.1999), this Court affirmed the denial of a Rule 32 petition where the defendant argued that the record was incomplete but the defendant was represented by the same attorney on appeal as in the trial court. We stated:
“Because the same attorney represented the appellant during the circuit court proceedings concerning, and on appeal from the denial of, the appellant’s Rule 32 petition, she should be aware of what occurred during those proceedings. Thus, the appellant has the burden of showing that the incomplete record caused him prejudice. He has not satisfied that burden.
“First, the appellant contends that the record is incomplete and unreliable because certain motions and discussions that occurred at the end of the Rule 32 hearing were not transcribed by the court reporter. In response to one of the appellant’s motions to supplement, the circuit court conducted a hearing at which the court, defense counsel, and counsel for the State attempted to reconstruct the missing portions of the transcript. From the record before us, it appears that the parties did an admirable job of reconstructing the discussion. Defense counsel contends that the record on appeal remains unreliable because the record of these communications is not ‘accurate.’ However, counsel does not point out specifically how the record is not accurate. Counsel also contends that ‘[ijmportant appellate issues were included in this discussion, and complete review is not possible without a transcript.’ Again, however, counsel does not specify which important appellate issues were included in those discussions. Further, in the appellant’s brief to this court, counsel does not appear to raise any issues concerning things that should have been included in the omitted portions of the transcript. Therefore, the appellant has not *146 shown that he has been prejudiced by the omission of the full discussion.
“The appellant also attempts to ‘question the reliability of the transcript that was provided, given the numerous errors pointed out by petitioner’s counsel and admittedly requiring correction.’ (Appellant’s brief at p. 22.) At the outset, we note that the court reporter addressed each error the appellant alleged existed in the transcript and made every effort to correct each alleged error. The circuit court also made every effort to facilitate defense counsel’s requests that the record be supplemented. Furthermore, counsel does not specifically point out any additional errors in the transcript. Rather, she makes a general allegation that there might be additional errors in the transcript. The appellant has not proven that the transcript of the Rule 32 proceedings is so incomplete or unreliable as to preclude full review of his claims.
“Based on our review of the record, including the three motions to supplement and the three supplemental records, we hold that there is a sufficient, reliable record upon which we can review the appellant’s claims. The appellant has not shown that he has been prejudiced by the allegedly unreliable record. Accordingly, his claim is without merit.”
Pierce v. State, 851 So.2d 558, 573-74 (Ala.Crim.App.1999), rev’d on other grounds, 851 So.2d 606 (Ala.2000). See also Hamm v. State, 913 So.2d 460 (Ala.Crim.App.2002).
Moreover, we have repeatedly held that it is the defendant’s duty to ensure that this Court has a complete record for appellate review. See Tarver v. State, 940 So.2d 312, 316 (Ala.Crim.App.2004). The Rules of Appellate Procedure provide two options a defendant may use when a record is incomplete. See Rules 10(d) and 10(e), Ala. R.App. P. Rule 10(d), Ala. R.App. P., states:
“Statement of the Evidence or Proceedings When No Report Was Made or When a Transcript Is Unavailable. If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant’s recollection. If the appellant prepares such a statement, the appellant shall serve it on the appellee within 28 days (4 weeks) after filing the notice of appeal; the appellee, within 14 days (2 weeks) after service, may serve on the appellant objections or proposed amendments to the statement. If the appellee serves no objection or proposed amendments, then, within 21 days (3 weeks) after the statement was served on the appellee, the appellant shall file the statement with the trial court for approval. If the appellee serves on the appellant any objections or proposed amendments, then, within 7 days (1 week) after service, the appellant shall file the statement and any objections or proposed amendments with the trial court for settlement and approval. Within 21 days (3 weeks) after the filing, the trial court shall rule, settling any questions regarding the objections and proposed amendments, and issuing an approved statement of the evidence or proceedings. The statement, either as approved by the court or as issued by the court after its ruling, shall be filed with the clerk of the trial court, who shall include it in the record on appeal.”
Rule 10(e), Ala. R.App. P., provides:
“Agreed Statement as the Record on Appeal. In lieu of the record on appeal as defined in subdivision (a) of this rule, *147 the parties may prepare and sign a statement of the case showing how the issues presented by the appeal arose and how they were decided in the trial court and setting forth only so many of the facts averred and proved or sought to be proved as are essential to a decision of the issues presented. If the statement conforms to the truth, it, together with such additions as the court may consider necessary to present fully the issues raised by the appeal, shall be approved by the trial court and shall then be certified to the appellate court to which the appeal is taken as the record on appeal, and it shall be transmitted thereto by the clerk of the trial court within the time provided by Rule 11.”
Bush could have availed himself of either of the above options but failed to do so. Instead, Bush asserted that it is not necessary to invoke these rules because court reporters were present at all the hearings. It is clear that the transcripts of the proceedings were not available because the court reporters who were present for the hearings could not be identified. Bush failed to ensure that the record was complete for appellate review.
Furthermore, we cannot say that Bush established that he suffered any prejudice. See Pierce. After reviewing the record in its entirety we are able to gleam what occurred at the status hearings the transcripts of which are missing from the record. Also, we have all the motions that were filed and the rulings that were made as a result of those motions. For these reasons, we find no reversible error.
IV.
Bush next argues that the State violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose impeachment evidence. He lists several different instances in support of this contention.
A.
Bush first argues that the prosecutor failed to disclose a statement by State’s witness Patricia Pringle that contradicted her trial testimony and that, he argues, would have undermined her credibility. Pringle testified at Bush’s first trial and because she could not be located her testimony from the first trial was read into evidence at Bush’s second and third trials. Pringle testified that she spoke with Bush after the robbery/murder and that he told her that he had shot the victim. Pringle’s husband, Edward Pringle, was convicted of attempted murder for his part in the robbery/murder and was sentenced to life imprisonment without the possibility of parole.
When denying relief on this claim, the circuit court stated:
“The issue regarding a prior statement of Patricia Pringle was not in Bush’s second amended [petition]. It was first raised at the,evidentiary hearing although counsel for Bush had it in her possession for some period of time prior to this hearing. In a recent case, it was held that a Court may refuse to allow a petitioner to amend his petition after the evidentiary hearing. McWilliams v. State, [897 So.2d 437 (Ala.Crim.App.2004) ].
“Furthermore, [Steve] Glassroth [Bush’s trial attorney] testified that he did not know whether the statement had been turned over to first trial counsel but that he was not aware of it at the time of trial. Pringle admitted that she had given another statement to police and such would be notice that there was more than one statement and not qualify as Brady material. Nelson v. Nagle, 995 F.2d 1549 (11th Cir.1993).
*148 “Bush has failed to prove that the State withheld the statement from first trial counsel and that the outcome would have been different given the overwhelming evidence presented by the State and is due to be denied. Strickland v. Washington, 466 U.S. 668 (1984). Moreover, this allegation fails to meet the requirements of Brady and is due to be summarily dismissed. Rules 32.3, 32.6(b), and 32.7(d), Ala.R.Crim.P.”
(C.R. 816-17.)
“To prove a Brady violation, a defendant must show that ‘ “(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issues at trial.” ’ ” Freeman v. State, 722 So.2d 806, 810 (Ala.Crim.App.1998), quoting Johnson v. State, 612 So.2d 1288, 1293 (Ala.Crim.App.1992).
However, as we stated in Payne v. State, 791 So.2d 383 (Ala.Crim.App.1999):
“Because this Brady claim was first presented in a Rule 32 petition, Payne can obtain relief only if it involves ‘newly discovered evidence.’ Newly discovered evidence is defined under Rule 32.1, Ala. R.Grim.P., as follows:
“ ‘Subject to the limitations of Rule 32.2, any defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that:
[[Image here]]
“ ‘(e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
“ ‘(1) The facts relied upon were not known by petitioner or petitioner’s counsel at the time of trial or sentencing or in time to file a posh-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;
“ ‘(2) The facts are not merely cumulative to other facts that were known;
“ ‘(3) The facts do not merely amount to impeachment evidence;
“ ‘(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and
“‘(5) The facts establish that petitioner is innocent of the crime for which petitioner was convicted or should not have received the sentence that petitioner received.’
“Rule 32.1(e), Ala.R.Crim.P. We note that because of the conjunctive ‘and’ between (4) and (5), Payne must meet all five prerequisites of Rule 32.1(e), Ala. R.Crim.P., in order to prevail. Cf. Brown v. State, [807 So.2d 1 (Ala.Crim.App.1999) ].”
791 So.2d at 397. Bush freely admits that the alleged suppressed evidence was merely impeachment evidence. Clearly, Bush failed to meet his burden of showing that he was entitled to relief. See Payne, supra.
B.
Bush next argues that the State suppressed information concerning Lonnie Harden, the State’s ballistics and firearms expert, who testified that the bullets recovered from the victim’s body were consistent with having been fired by the gun that was recovered with Bush’s assistance.
In addressing this issue, the circuit court stated:
“[Bush] alleges the State violated Brady v. Maryland, 373 U.S. 83 (1963), by not *149 disclosing that Lonnie Harden, the State’s ballistics and firearms expert who testified at trial, had been disciplined or terminated by the Alabama Department of Forensic Sciences for giving inaccurate testimony and deficient work performance.
“Glassroth testified that the State had an open file policy regarding discovery. He also stated that he learned of Harden’s disciplinary problems some time after the trial and that it would have been useful to have known it at the time.
“However, even if the allegations made by Bush concerning Harden’s work history are true, there still would have been no Brady violation. At trial, testimony other than Harden’s established that Bush led police officers to the location of the gun used in the capital murders. Bush positively identified the gun as being the one he used in the capital murders. Harden’s testimony that the bullets recovered from the victims were fired from the same gun that was recovered by police simply corroborated other evidence that had already been admitted. Harden’s testimony was cumulative, not material, and the allegation that Harden had been disciplined certainly was not exculpatory. In the fight of the evidence presented at Bush’s trial, any failure by the State to disclose information regarding possible discrepancies in Harden’s analysis in other cases would not have amounted to a Brady violation. See Bush v. State, 695 So.2d at 104 (holding that, because Bush confessed and led police to the murder weapon, ‘the ballistics evidence was neither critical nor subject to varying expert opinion’).
“Bush offered no evidence at the evi-dentiary hearing that would establish that if information concerning Harden existed at the time of his last trial and if it were turned over to trial counsel it would have been exculpatory or material. See Nelson v. Nagle, 995 F.2d 1549, 1555 (11th Cir.1993) (holding that ‘[a] Brady violation has three elements: (1) suppression by the prosecution (2) of exculpatory evidence (8) material to the issue at trial or sentencing’). Bush has failed to prove that there is a reasonable probability that if trial counsel had been provided this information prior to trial that the outcome would have been different. Therefore, this allegation is due to be denied by the Court. Rules 32.3, 32.6(b), and 32.7(d), Ala.R.Crim.P.”
(C.R. 814-16.) The circuit court’s findings are supported by the record. On direct appeal we stated that Harden’s testimony was not material. Therefore, Bush cannot satisfy the requirements of establishing a Brady violation because the alleged suppressed evidence was not material.
Moreover, as we stated above, because this alleged Brady violation is raised in a postconviction petition, the petitioner must also satisfy the requirements for newly discovered evidence. Bush alleged that the suppressed evidence was impeachment evidence. Thus, Bush also failed to meet the requirements of Rule 32.1(e), Ala. R.Crim. P. See Payne.
C.
Next, Bush argues that the State violated Brady by failing to give him certain information concerning the informants.
The circuit court stated the following concerning this claim:
“Bush also contends that he should have been provided informant information in order to impeach Officer Ward’s testimony that he (Ward) did not coerce Bush into giving a statement. Bush gives no indication how information about an informant would have been rel *150 evant or admissible in establishing that Ward coerced Bush into confessing. This allegation is totally speculative and fails to meet any of the Brady requirements; therefore, it is due to be summarily dismissed by the Court. Rules 32.3, 32.6(b), and 32.7(d), Ala. R.Crim. P.”
(C.R. 817-18.)
Initially, Bush failed to meet his burden of pleading and proving this claim. As the circuit court stated, Bush gave no indication of how the information would have been relevant. This claim was correctly dismissed. See Rule 32.7(d), Ala. R.Crim. P.
Moreover, Bush states that the alleged Brady violation concerned evidence that would have been relevant for impeachment purposes. Thus, Bush cannot satisfy the requirements of Rule 32.1(e), Ala. R.Crim. P.
V.
Bush next argues that this case should be remanded to the Montgomery Circuit Court for that court to hold a hearing on his claim that he is mentally retarded and that Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), bars the imposition of the death penalty in his case.
The United States Supreme Court in Atkins held that it was a violation of the Eighth Amendment to execute a mentally retarded individual. The Supreme Court left it to the individual states to define mental retardation. Though Alabama has yet to enact any legislation on this issue, the Alabama Supreme Court in Ex parte Perkins, 851 So.2d 453 (Ala.2002), adopted the most liberal view of mental retardation held by any of the states that currently bar the execution of the mentally retarded. Under Perkins, to be mentally retarded, the defendant must have: (1) significant subaverage intellectual functioning, i.e., an IQ of 70 or below; (2) significant or substantial deficits in adaptive behavior; and (3) these problems must have manifested themselves during the developmental years, i.e., before the defendant reached the age of 18.
When addressing this claim, the circuit court stated:
“At the evidentiary hearing, the Court, over the State’s objection, granted Bush’s motion to amend his Rule 32 petition to include the allegation that he is mentally retarded and, thus, his execution would violate the Supreme Court’s holding in Atkins v. Virginia, 122 S.Ct. 2242 (2002). Prior to the hearing, the State was put on notice about this issue as Bush had filed a motion to amend his petition to add this claim and the State filed a response.
“In this case, as stated earlier, Bush received technical training while incarcerated in Texas. There was also evidence that he had worked as a mechanic and in construction. Although he had poor academic skills, the Court has reviewed his statements and responses to the police that show that he was able to effectively communicate. Tests showed that Bush had an IQ between 69 and 74.
“In Ex parte Smith, [[Ms. 1060427, May 25, 2007] — So.3d — (Ala.2007) ], the Alabama Supreme Court held that Smith’s overall IQ of 72 ‘seriously undermines any conclusion that Smith suffers from significantly subaver-age intellectual functioning as contemplated under even the broadest definitions ‘[of mental retardation].’
“The Court is of the opinion that Bush failed to prove that he had ‘significant’ or ‘substantial’ deficits in adaptive behavior before or after age 18.’ Ex parte Perkins, 851 So.2d at 456. Therefore *151 Bush’s allegation that his mental retardation would prohibit execution is due to be denied by the Court. Rule 32.7(d), Ala. R.Crim. P.”
(C.R. 818-19.) The circuit court’s ruling is supported by the record.
The record of the postconvietion proceedings contains a copy of a psychological assessment conducted on Bush in 1979. Bush was born in 1950. The examiner states that he performed the Wechsler Adult Intelligence Scale (“WAIS”) test on Bush and that Bush scored a verbal IQ of 77, a performance IQ of 74, and a full-scale IQ of 74. (Supplemental record, p. 723.) Also, the results of a second WAIS are also contained in the record. This WAIS was conducted in 1984. On that WAIS test Bush scored a verbal IQ of 74, a performance IQ of 84, and a full-scale IQ of 75. The record also shows that Bush was administered the BETA IQ test in 1979 and that he scored a 69 on that test.
Also, we have examined the record of the direct appeal. Bush testified at the suppression hearing and appeared articulate. Bush also acquired technical skills while he was in the federal penitentiary, completed a six-month mechanics course, and had worked as a mechanic and on various construction-type jobs. Bush also had several long-term relationships and one child.
The record affirmatively shows that Bush does not meet the most liberal definition of mental retardation adopted by the Alabama Supreme Court in Perkins. Thus, the United States Supreme Court’s decision in Atkins does not bar Bush’s death sentence.
VI.
Bush next argues that the circuit court erred in denying his claims that his trial counsel’s performance was ineffective. He lists many different grounds in support of this contention.
When reviewing claims of ineffective assistance of counsel we apply the standard adopted by the United States Supreme Court in Strickland, v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on a claim of ineffective assistance of counsel a petitioner must show: (1) that counsel’s performance was deficient; and (2) that the petitioner was prejudiced by the deficient performance.
“Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-34[, 102 S.Ct. 1558, 71 L.Ed.2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ See Michel v. Louisiana, [350 U.S. 91], at 101[, 76 S.Ct. 158, 100 L.Ed. 83 (1955) ]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.”
Strickland v. Washington, 466 U.S. at 689.
*152 “[T]he purpose of ineffectiveness review is not to grade counsel’s performance. See Strickland [v. Washington], [466 U.S. 668,] 104 S.Ct. [2052] at 2065 [ (1984) ]; see also White v. Singletary, 972 F.2d 1218, 1221 (11th Cir.1992) CWe are not interested in grading lawyers’ performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.’). We recognize that ‘[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.’ Strickland, 104 S.Ct. at 2067. Different lawyers have different gifts; this fact, as well as differing circumstances from case to case, means the range of what might be a reasonable approach at trial must be broad. To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or ‘what is prudent or appropriate, but only what is constitutionally compelled.’ Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987).
[[Image here]]
“Because the reasonableness of counsel’s acts (including what investigations are reasonable) depends ‘critically’ upon ‘information supplied by the [petitioner]’ or ‘the [petitioner’s own statements or actions,’ evidence of a petitioner’s statements and acts in dealing with counsel is highly relevant to ineffective assistance claims. Strickland, 104 S.Ct. at 2066. ‘[An] inquiry into counsel’s conversations with the [petitioner] may be critical to a proper assessment of counsel’s investigation decisions, just as it may be critical to a proper assessment of counsel’s other litigation decisions.’ Id. (‘[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel’s failure to pursue those investigations may not later be challenged as unreasonable.’).”
Chandler v. United States, 218 F.3d 1305, 1313-19 (11th Cir.2000) (footnotes omitted).
At trial Bush was represented by attorneys Stephen Glassroth and James Seale. At the time of Bush’s trial, Seale was the president of the Alabama State Bar Association. Glassroth testified at the postcon-viction hearing; however, Seale did not. Glassroth testified that he was admitted to practice law in 1979 and that he represented Bush at Bush’s 1991 trial. He said that he specialized in criminal defense work and that he had also represented Bush in his second trial. He also testified that Seale was in charge of the penalty phase of the trial. Glassroth and Seale also represented Bush on direct appeal.
A.
Bush first argues that his counsel was ineffective for failing to properly challenge the voluntariness of his statement to police.
In regard to this claim, the circuit court stated:
“In support of these contentions, Dr. Richard Leo, a social research psychologist, testified about the techniques used by the police when obtaining Bush’s statement. Dr. Leo stated that some factors present here, such as the time the statements were taken, the length of time involved, contradictory accounts given, Bush being handcuffed some of the time and the use of the Bible, were not good police techniques and could render a confession coercive.
[[Image here]]
*153 The voluntariness of his statements was addressed by the trial court in detail in Bush II and again in this case on appeal. His educational level was also addressed and the Court of Criminal Appeals found his confession to be knowingly and voluntarily made. Bush v. State, 695 So.2d [70,] 121-124 [ (Ala.Crim.App.1995) ].
“This Court had the opportunity to observe Dr. Leo and assess his testimony. In addition, the Court has reviewed the record and transcripts of Bush’s statements that affirmatively show he voluntarily and knowingly waived his Miranda rights and that his statements were knowingly and voluntarily made. This Court finds that Bush has failed to show that he did not intelligently waive his Miranda rights or that his statements were not voluntarily made and that he has failed to meet his burden of proof as to these allegations. Rule 32.3, Ala. R.Crim. P.”
(C.R. 796-97.) We specifically found in our opinion on direct appeal that Bush’s statements to the police were not involuntary. Therefore, Bush could not satisfy the requirements of Strickland.
Also, Glassroth was not questioned at the evidentiary hearing about his strategy in regard to Bush’s confession. Glassroth did say that the confession and Patricia Pringle’s testimony were the most important evidence against Bush. If the record is silent as to the reasons behind counsel’s actions, we presume that counsel’s actions were reasonable. See Brooks v. State, 929 So.2d 491, 497 (Ala.Crim.App.2005).
M
Bush next argues that his counsel was ineffective for failing to “fully litigate” the argument that counsel at his first trial was ineffective in his cross-examination of Patricia Pringle.
In regard to this claim, the circuit court stated:
“[Bush] contends that trial counsel was ineffective for failing to ‘litigate fully the ineffectiveness of prior counsel in cross-examining and generally challenging the testimony of Patricia Pringle.’ This contention is based on his allegation that trial counsel at his first trial failed to adequately cross-examine Pringle regarding her motives to lie and her relationship with Edward and Cornelius Pringle.
“Glassroth testified that he was concerned that cross-examination in a prior trial was not sufficient and objected at trial and argued the admission of Prin-gle’s testimony on appeal. This matter was addressed on appeal and the Court of Criminal Appeals held that prior trial counsel was not ineffective in the cross-examination of Pringle. In addition, it was pointed out that in this case, Officer Ward testified that she received a portion of the reward money. Bush v. State, 695 So.2d at 128. Again, Bush has failed to meet his burden of proof and this allegation is without merit and is denied. Rule 32.7(d), Ala. R.Crim. P.”
(C.R. 804-05.)
On direct appeal, this Court stated the following concerning counsel’s cross-examination of Patricia Pringle:
“We have reviewed the testimony of Mrs. Pringle and particularly her testimony on cross-examination, and applying the plain error analysis, we do not agree with [Bush’s] contention that trial counsel was ineffective in his cross-examination. His questions substantially comported with the principal purpose behind the confrontation requirement by challenging the witness’s veracity. More specifically, contrary to the assertions of [Bush], the cross-examination *154 did address the possible bias of the witness against [Bush] because of a possible desire to protect her husband, and also the possibility that her testimony was motivated by the hope of a reward. We note that Lieutenant Ward testified on cross-examination in this case that, on the day after the crimes, a $30,000 reward was offered for information about the crimes, and that this offer was given wide publicity throughout Montgomery. He also testified that Mrs. Pringle received a portion of the reward money. Thus, the jury had this information in the present trial to evaluate in deciding the weight and credibility to give the witness’s testimony. Moreover, [Bush’s] counsel vigorously argued the particular issue of bias created by the receipt of reward money in his closing summation to the jury. [Bush’s] contention that trial counsel in the first trial could not have used the information of Edward Pringle’s involvement in the crimes and his vulnerability to prosecution in cross-examining Mrs. Pringle is not supported by the record. The cross-examination elicited the information from the witness that her husband, Edward Pringle, had been charged with the same crimes as [Bush], There was certainly evidence before the jury of the involvement of Edward Pringle in the commission of the crimes so that it could judge the possible bias of the witness in placing the blame for the killings on [Bush] instead of on her husband. Of course, [Bush] could have argued the possibility of such bias to the jury. In reference to the contention that [Bush] was denied effective assistance of counsel because counsel did not have or did not use the information that Holmes had identified Cornelius Pringle as the gunman at a pretrial lineup to use in his cross-examination of the witness, we note that the jury in the instant case had that information for its consideration in weighing the credibility of Mrs. Pringle as well as that of Holmes. In reference to the remaining contentions that trial counsel was ineffective because he failed to object to testimony from the witness that she spoke with [Bush] after her husband had told her about the crimes and because he asked a question concerning a second gun involving an unrelated incidence, we find no merit. We find no ineffectiveness of counsel in his cross-examination of the witness nor in his representation of [Bush].”
695 So.2d at 128-29. This Court specifically determined that counsel’s cross-examination of Pringle was not deficient. Because the substantive issue had no merit, Bush cannot satisfy the requirements of Strickland, supra.
C.
Bush next argues that counsel was ineffective for failing to effectively cross-examine several state witnesses.
The circuit court stated the following concerning this claim:
“[Bush] alleges counsel failed to ‘adequately cross examine’ Tony Holmes and the officers who obtained his statement. More specifically, Bush alleges that trial counsel failed to impeach Holmes with evidence of his prior statements, his inability to identify Bush at ‘any forum’ prior to the first trial, and ‘did little to challenge [Holmes’s] subsequent identification of [Bush].’
“However, the record shows that during cross-examination of Holmes, he admitted that his memory was better 10 years before at the first trial, and that the police and people in the district attorney’s office had ‘helped’ him remember things. Holmes also admitted that, by helping, he hoped to receive some of the reward money and that he had origi *155 nally identified the codefendant’s brother in a photo lineup and a physical lineup as the shooter. Holmes also testified that nothing was taken from him or the murder victim before or after the shooting. Trial counsel also impeached Holmes on his identification of the code-fendant, Edward Pringle, and had Holmes admit that he identified Bush because the police told Holmes that they knew that Bush was the perpetrator.
“Thus, the record shows that trial counsel vigorously cross-examined Holmes concerning his prior statements, his misidentification of Bush in a photo and a physical lineup, and his identification of Bush at the last trial. No evidence was presented at the evidentiary hearing refuting the record and therefore these allegations are without merit.”
(C.R. 800-01.) We agree with the circuit court’s findings.
Moreover, Glassroth was not asked during the evidentiary hearing about his cross-examination of any witnesses except Patricia Pringle and Lonnie Harden.
“ ‘ “[W]here the record is incomplete or unclear about [counsel’s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment.” ’ Chandler v. United States, 218 F.3d 1305, 1314 n. 15 (11th Cir.2000) (en banc) (quoting Williams v. Head, 185 F.3d 1223, 1228 (11th Cir.1999)).”
Grayson v. Thompson, 257 F.3d 1194, 1218 (11th Cir.2001).
Furthermore,
“ ‘[Decisions regarding whether and how to conduct cross-examinations and what evidence to introduce are matters of trial strategy and tactics.’ Rose v. State, 258 Ga.App. 232, 236, 573 S.E.2d 465, 469 (2002). ‘ “ ‘[Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are ... strategic in nature.’ ” ’ Hunt v. State, 940 So.2d 1041, 1065 (Ala.Crim.App.2005), quoting Rosario-Dominguez v. United States, 353 F.Supp.2d 500, 515 (S.D.N.Y.2005), quoting in turn, United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.1987). ‘The decision whether to cross-examine a witness is [a] matter of trial strategy.’ People v. Leeper, 317 Ill.App.3d 475, 483, 740 N.E.2d 32, 39, 251 Ill.Dec. 202, 209 (2000).”
A.G. v. State, 989 So.2d 1167, 1173 (Ala.Crim.App.2007).
D.
Bush next argues that counsel was ineffective for failing to object to the State’s discriminatory use of its peremptory strikes to remove women from the venire. Specifically, he asserts that counsel was ineffective for failing to make a J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), objection.
The United States Supreme Court in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), held that it was a violation of the Equal Protection Clause to exclude black veniremembers from a black defendant’s jury based solely on their race. This holding was extended to gender-based strikes in J.E.B.
When denying relief on this claim, the circuit court stated:
“Bush’s latest trial occurred in January 1991. The United States Supreme Court did not decide J.E.B. until April 19, 1994, more than three years after Bush’s latest trial. The Alabama Court of Criminal Appeals has held that ‘[w]e will not hold [trial] counsel ineffective for failing to forecast changes in the law.’ Nicks v. State, 783 So.2d 895, 923 (Ala.Crim.App.1999), cert. quashed as *156 improvidently granted, Ex parte Nicks, 783 So.2d 926 (Ala.2000) (holding trial counsel was not ineffective for failing to make an objection under Batson v. Kentucky, [476 U.S. 79] (1986), when petitioner’s trial was held prior to Batson being decided). Furthermore, Glassroth testified that he kept bringing up Bat-son before the jury was sworn. The Court is of the opinion that this allegation is without merit and is due to be denied.”
(C.R. 810-11.) Counsel was not “ ‘obliged to object based on possible future developments in the law in order to render effective assistance.’ ” Thompson v. State, 581 So.2d 1216, 1236 (Ala.Crim.App.1991). Thus, Bush failed to show that counsel was ineffective in regard to this claim.
E.
Bush next contends that trial counsel was ineffective in arguing his motions for expert assistance and an investigator.
The circuit court stated the following in regard to this claim:
“Bush alleges trial counsel were ineffective for failing to present evidence to the trial court in order to obtain expert assistance and an investigator. The record shows that trial counsel filed a motion for an ex parte hearing seeking approval for funds for various experts and an investigator.
“The trial court allowed limited funds for a forensic psychologist. Glassroth testified that he did consult with a psychologist and would have called him to testify if he had developed evidence favorable to Bush. With regard to an investigator, this issue was discussed in detail on appeal. The Court of Criminal Appeals held that there was no reason to approve such funds as the facts of the case and witnesses were known.
“This Court is of the opinion that Bush failed to meet his burden of proving the allegations in paragraph 13(o) and, therefore, it is due to be denied. Rule 32.3 and 32.7(d), Ala. R.Crim. P.”
(C.R. 797-98.) The circuit court’s findings are supported by the record. The record also shows that counsel was given $3,500 for an investigator and additional funds for a psychiatric expert.
Moreover, at the evidentiary hearing on the Rule 32 petition Bush did not question Glassroth about his manner of proceeding on his requests for expert assistance. Therefore, we presume that counsel’s conduct was reasonable. See Grayson v. Thompson, supra.
F.
Bush next argues that counsel failed to properly litigate the identity and reliability of the informants who notified police that Bush was involved in the robbery/murder.
In regard to this claim, the circuit court stated:
“Glassroth testified that he attempted to locate one possible informant in Florida and tried to find and show who got reward money. The record also shows that defense counsel attempted to learn about informants through cross-examination.
“No evidence was presented that a possible Florida informant twenty years prior to trial would have been helpful to the defense. Furthermore, the Court of Criminal Appeals has held that in cases involving ‘tipsters,’ disclosure of identity is not material and not required. Mason v. State, 768 So.2d 981 (Ala.Cr.App.1998). The Court is of the opinion that Bush has failed to meet his burden of *157 proof as to this ground and it is due to be denied. Rule 32.8, A.R.Crim. P.”
(C.R. 798-99.)
Bush pleaded the following in his petition in regard to this claim:
“Trial counsel failed to adequately challenge the reliability of the informants upon whom the arrest of Mr. Bush depended or to litigate fully the release of their identities. During the suppression hearing held at petitioner’s second trial and incorporated into this one, reference was continually made to an informant or informants who allegedly led the police to William Bush. The police referenced ‘an informant in Pensacola’ and ‘other persons who overheard information about the crime.’ Counsel at the 1984 hearing did little more than ask the informant’s name and accept a refusal from the prosecution. When he asked if the informant was Eddie Lee Lowe, he was told by the investigating officer, T have no idea.’ Counsel at the trial that is the subject of this petition did not raise these issues again adequately on Mr. Bush’s behalf. They did not seek again to find out all they could about the informant; investigate his reliability or lack thereof; or find out who the unnamed ‘other persons’ might be. The failure of trial counsel to pursue the identity and circumstances surrounding the informant and his or her relationship to the police and to this case amounted to ineffective assistance of counsel. But for trial counsel’s ineffectiveness, the outcome of the case would have been different.”
(C.R. 370.) Bush failed to plead or prove how he was prejudiced as a result of counsel’s alleged failure to adequately challenge the reliability of the informants. Thus, he failed to meet his burden of pleading sufficient facts to show that he was entitled to relief. See Rule 32.6(b), Ala. R.Crim. P.
Moreover, in rejecting a claim of ineffective assistance of counsel based on counsel’s failure to request the name of a confidential informant, the Illinois Court of Appeals in People v. Glenn, 363 Ill.App.3d 170, 842 N.E.2d 773, 299 Ill.Dec. 736 (2006), stated:
“Defendant faces a major hurdle in his attempt to establish prejudice. As he acknowledges, the record does not disclose what the informant’s testimony would have been. This alone would normally be enough to defeat defendant’s claim. See People v. Holman, 132 Ill.2d 128, 167, 138 Ill.Dec. 155, 547 N.E.2d 124 (1989) (rejecting ineffectiveness claim where counsel failed to call a witness and there was nothing in the record indicating that the witness’s testimony would be favorable to the defendant); People v. Markiewicz, 246 Ill.App.3d 31, 47, 186 Ill.Dec. 65, 615 N.E.2d 869 (1993). Defendant argues, nevertheless, that ‘[t]he very failure to investigate and prepare for trial in a case where the informant is so pivotal should constitute the requisite prejudice.’ We do not agree. Prejudice simply cannot be presumed under ordinary circumstances ([People v.] Johnson, 128 Ill.2d [253,] 271, 131 Ill.Dec. 562, 538 N.E.2d 1118 [ (1989) ]), and defendant’s request, in essence, is that we presume prejudice from counsel’s conduct... .In the absence of information, the burden of proof is typically dispositive.”
363 Ill.App.3d at 173-74, 842 N.E.2d at 777, 299 Ill.Dec. at 740. For these reasons, Bush failed to satisfy the Strickland test in regard to this claim.
G.
Bush argues that trial counsel was ineffective for failing to “forcefuUy” argue on *158 Bush’s behalf in his guilt-phase closing arguments.
The circuit court stated the following in regard to this claim:
“In the guilt phase closing argument, trial counsel emphasized the importance of the case and the jury’s duty; he highlighted the inconsistencies in Tony Holmes’s testimony and argued it had been improperly influenced by the police and Holmes’s hope of reward money; he argued the absence of fingerprint evidence at the crime scene; stressed that the manner in which Bush’s statement was taken by police was coercive; attempted to discount the prior testimony of Patricia Pringle by emphasizing her bias and hope of reward; stressed that the State had failed to carry its burden of proving his guilt beyond a reasonable doubt; and implored the jury to weigh the evidence carefully before returning a verdict.
“When reviewing defense counsel’s closing arguments in a post-conviction proceeding, it has been held that a reviewing court should not unnecessarily grade counsel’s closing argument performance as it is an inherently subjective task. Strickland v. Washington, [466 U.S. 668 (1984) ].
“Again, this Court when considering this allegation cannot ignore the fact that the jury unanimously recommended life without parole that would contradict the allegation that defense counsel’s argument was not inadequate.[12] Therefore, this allegation is without merit.”
(C.R. 808-09.)
We have reviewed counsel’s closing argument and we agree with the circuit court that trial counsel was not ineffective. Indeed, counsel vigorously argued on Bush’s behalf. The fact that the argument was unsuccessful does not make counsel’s performance ineffective.
H.
Bush next argues that counsel was ineffective for failing to object to several instances of alleged prosecutorial misconduct. Bush fails to cite the specific instances in his brief.
The circuit court stated the following when addressing this claim:
“Bush first contends trial counsel was ineffective for failing to object to the prosecutor arguing that Bush executed the victims so they would not be able to speak and that this comment was unsupported by the record. However, evidence was presented at trial showing the manner in which Bush shot the victim. The Alabama Court of Criminal Appeals concurred with the trial court’s finding that Bush killed the victim execution-style. Bush v. State, 695 So.2d [70] at 85 [ (Ala.Crim.App.1995) ]. Because the prosecutor’s argument was a legitimate inference supported by the evidence, trial counsel had no basis on which to object. See Boyd v. State, 746 So.2d 364, 397 (Ala.Crim.App.1999) (holding that ‘[c]ounsel cannot be said to be ineffective for not filing a motion for, which there is no legal basis.’).
“Bush next alleges trial counsel should have objected to the prosecutor’s closing argument that the defense was trying to distract the jury with its questions. When read in the context of the State’s entire closing argument and the evidence presented at trial, it would sug *159 gest that this comment by the prosecution concerned the strength of the State’s case and the evidence of Bush’s guilt. Because these were permissible arguments by the prosecutor, an objection by trial counsel, if made, would not have been sustained. Thomas v. Jones, 891 F.2d 1500, 1505 (11th Cir.1989) (holding trial counsel was not ineffective for failing to object to admissible evidence).
“Bush also alleges that trial counsel should have objected to the prosecution’s argument that ‘this case was more important than others.’ However, a review of the record fails to support this allegation and it being without merit, it is due to be denied.’ See Gibby v. State, 753 So.2d [1206] at 1207-1208 [ (Ala.Crim.App.1999) ].
“Bush further alleges that trial counsel should have objected to the prosecutor commenting on his rights as a criminal defendant. In its first closing argument during the penalty phase, the prosecutor stated that the State was first required to meet the burden of proving Bush guilty beyond a reasonable doubt and then must meet the burden of proving that the aggravating circumstances outweigh the mitigating circumstances.
“When the prosecutor’s comment is read in the context of the entire penalty phase of trial, it is obvious that the comment was in reply to trial counsel’s opening statement regarding the State’s burden of proof. Replies in kind are generally permitted. Blackmon v. State, 574 So.2d 1037, 1040 (Ala.Crim.App.1990). In addition it was a correct statement of the law.
[[Image here]]
“... [I]t is alleged that trial counsel were ineffective for failing to object to the prosecution’s argument that ‘deterrence was a proper jury consideration in this case.’ The record reveals that not only did trial counsel object to the prosecutor’s comment, but that the trial court sustained their objection. This allegation is, therefore, totally refuted by the record and is without merit and due to be denied.”
(C.R. 805-08.)
In Moore v. State, 659 So.2d 205 (Ala.Crim.App.1994), we stated:
“Objections are a matter of trial strategy, and an appellant must overcome the presumption that ‘counsel’s conduct falls within the wide range of reasonable professional assistance,’ that is, the presumption that the challenged action ‘might be considered sound trial strategy.’ Strickland [v. Washington], 466 U.S. [668] at 687-88, 104 S.Ct. [2052] at 2064, 80 L.Ed.2d [674] at 693 (1984). Again, the appellant has not shown how she was prejudiced by trial counsel’s failure to make objections.”
659 So.2d at 209. We agree with the circuit court that counsel was not ineffective for failing to object to the prosecutor’s actions.
Moreover, Glassroth was not questioned as to why he failed to object to the alleged instances of prosecutorial misconduct. “If the record is silent as to the reasoning behind counsel’s actions, the presumption of effectiveness is sufficient to deny relief on ineffective assistance of counsel claim.” Howard v. State, 239 S.W.3d 359, 367 (Tex.App.2007).
I.
Bush next argues that counsel was ineffective for failing to pursue a defense in the guilt phase and for failing to focus on Bush’s lack of intent to kill.
The circuit court made the following findings on this claim:
*160 “[Bush] alleges that trial counsel were ineffective for failing to investigate and present evidence that even if Bush was at the crime scene, he was not the shooter and did not know that the codefen-dant intended to rob and shoot the store clerk or, in the alternative, that he (Bush) lacked the requisite intent due to his severe intoxication.
“Claims of inadequate investigation must be shown with specificity as to what information would have been obtained and, assuming such evidence is admissible, whether its admission would have produced a different result. Nelson v. Hargett, 989 F.2d 847 (5th Cir. 1993).
“No evidence was presented as to what evidence was available or could have been obtained and presented to support these claims. Furthermore, Bush in his confessions stated that he was the shooter and did not state that drugs or intoxication were factors. Again, the Court finds that Bush has failed to meet his burden of proof or prove any factual basis to support these allegations and these allegations are due to be denied. Rule 82.3, 32.6(b) and 32.7(d), Ala. R.Crim. P.
“... [Bush] alleges that trial counsel were ineffective for not establishing that he did not possess the requisite intent to kill. Bush contends that trial counsel should have introduced to the jury ‘evidence of intoxication’ and ‘expert support to show that the murder weapon could have fired accidentally.’ Id.
“Bush failed to offer any evidence or prove that he was intoxicated at the time of the murder or that the weapon used by Bush could have accidentally fired. Further, despite being granted funds to retain a firearms expert, Bush presented no evidence at the hearing addressing his allegation that the gun could have misfired and this ground is due to be denied. Rule 32.3, Ala. R.Crim. P.
(C.R. 802-04.)
On direct appeal, we made the following observations about counsel’s defense at Bush’s third trial:
“It is apparent from the arguments of [Bush’s] trial counsel, the cross-examination of the state’s witnesses, and the assertions made in [Bush’s] brief that his defense theory was mistaken identity. In furtherance of this theory, he sought to bolster Holmes’s identification of Edward Pringle’s brother, Cornelius Pringle, as the robber-assailant. He also points out that a number of fingerprints were lifted from the scene of the charged crime and that one matched his. He attempted to discredit the testimony of Patricia Pringle, the wife of Edward Pringle — that her husband had told her that he and [Bush] had committed the three crimes and that [Bush] had told her that he had shot Dominguez, Holmes, and Adams — by showing that she had received reward money for furnishing that information to the authorities. Finally, he attempted to discredit his incriminating statements by attempting to make it appear that the statements were obtained by coercion and in violation of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).”
695 So.2d at 82. Counsel clearly had a defense theory that he argued to the jury. The fact that Bush was convicted does not make his counsel’s performance ineffective.
“The fact that this defense strategy was ultimately unsuccessful with the jury does not render counsel’s performance deficient. See Johnson v. State, 769 So.2d 990, 1001 (Fla.2000) (‘Simply because the ... defense did not work, it does not mean that the theory of the *161 defense was flawed.’ (quoting trial court’s order)).”
Heath v. State, 3 So.3d 1017, 1029 (Fla.2009). “Hindsight does not elevate unsuccessful trial tactics into ineffective assistance of counsel.” People v. Eisemann, 248 A.D.2d 484, 484, 670 N.Y.S.2d 39, 40-41 (1998).
Moreover, at the evidentiary hearing, Glassroth was not questioned as to why he presented the defense that he did. Accordingly, we presume that counsel’s performance was reasonable. See Grayson v. Thompson, supra.
J.
Bush further asserts that counsel was ineffective for failing to object to what Bush says was prejudicial testimony concerning the crime scene and to allegedly prejudicial photographs of the crime scene.
The circuit court made the following conclusions:
“[E]ven though their testimony was graphic it was also based on their personal observations and descriptions of how badly [the victim] was bleeding and the crime scene in general.
“The appellate courts have repeatedly held that ‘[ejvidence as to the scene of a crime, as to objects found thereat, and as to the condition of the body, is admissible and relevant evidence, when reasonably proximate to the scene in time and location.’ Land v. State, 678 So.2d 201, 210 (Ala.Crim.App.1995).”
(C.R. 800-01.) The circuit court also stated:
“Photographs illustrating crime scenes have been admitted into evidence, as have photographs of victims and their wounds. Furthermore, photographs that show the external wounds of a deceased victim are admissible even though the evidence is gruesome and cumulative and relates to undisputed matters. Finally, photographic evidence is admissible even if it has a tendency to inflame the minds of the jurors.”
(C.R. 802.) The circuit’s conclusions are supported by caselaw and we agree with them.
Moreover, “[Effectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places where objections might be made. Effectiveness of counsel is not measured by whether counsel objected to every question and moved to strike every answer.” Brooks v. State, 456 So.2d 1142, 1145 (Ala.Crim.App.1984). As we recently stated in Hooks v. State, 21 So.3d 772 (Ala.Crim.App.2008):
“ ‘ “Decisions concerning whether or when to make objections at trial are left to the judgment of counsel.” State v. Suarez, 867 S.W.2d 583, 587 (Mo.App.1993). “Ineffective assistance of counsel is not to be determined by a post-trial academic determination that counsel could have successfully objected to evidence in a given number of instances.” Id. “The failure to object to objectionable evidence does not establish ineffective assistance of counsel unless the evidence resulted in a substantial deprivation of the accusedfs] right to a fair trial.” Id. “Counsel’s failure to object to particular evidence can constitute mere ‘trial error’ not arising to constitutional proportions and thus not cognizable in a post-conviction motion.” Id.’ ”
Quoting State v. Radley, 904 S.W.2d 520, 525 (Mo.App.1995).
K.
Bush last argues that even if we conclude that none of the instances he cites constitute ineffective assistance of counsel, the cumulative effect of those instances of *162 ineffective assistance of counsel require reversal.
As we stated in Brooks v. State, 929 So.2d 491 (Ala.Crim.App.2005):
“Other states and federal courts are not in agreement as to whether the ‘cumulative effect’ analysis applies to Strickland claims. As the Supreme Court of North Dakota noted in Garcia v. State, 678 N.W.2d 568, 578 (N.D.2004):
“ ‘Garcia argues that even if trial counsel’s individual acts or omissions are insufficient to establish he was prejudiced, the cumulative effect was substantial enough to meet Strickland’s test. See Williams v. Washington, 59 F.3d 673, 682 (7th Cir.1995) (“In making this showing, a petitioner may demonstrate that the cumulative effect of counsel’s individual acts or omissions was substantial enough to meet Strickland’s test”); but see Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir.1990) (“cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own”).’
“See also Holland v. State, 250 Ga.App. 24, 28, 550 S.E.2d 433, 437 (2001) (‘Because the so-called cumulative error doctrine is inapplicable, each claim of inadequacy must be examined independently of other claims, using the two-prong standard of Strickland v. Washington.’ (footnote omitted)); Carl v. State, 234 Ga.App. 61, 65, 506 S.E.2d 207, 212 (1998) (‘Georgia does not recognize the cumulative error rule.’); Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir.1998) (‘Not surprisingly, it has long been the practice of this Court to individually assess claims under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See, e.g., Hoots v. Allsbrook, 785 F.2d 1214, 1219 (4th Cir. 1986) (considering ineffective assistance claims individually rather than considering their cumulative impact.).’).
“We can find no case where Alabama appellate courts have applied the cumulative-effect analysis to claims of ineffective assistance of counsel. However, the Alabama Supreme Court has held that the cumulative effect of prosecutorial misconduct necessitated a new trial in Ex parte Tomlin, 540 So.2d 668, 672 (Ala.1988) (‘We need not decide whether either of the two errors, standing alone, would require a reversal; we hold that the cumulative effect of the errors probably adversely affected the substantial rights of the defendant and seriously affected the fairness and integrity of the judicial proceedings.’). Also, in Ex parte Bryant, 951 So.2d 724 (Ala.2002), the Supreme Court held that the cumulative effect of errors may require reversal.
“If we were to evaluate the cumulative effect of the ineffective assistance of counsel claims, we would find that Brooks’s substantial rights were not injuriously affected. See Bryant and Rule 45, Ala.R.App.P.”
929 So.2d at 514. We likewise find no cumulative error warranting reversal.
VII.
Bush next argues that his appellate counsel was ineffective for failing to raise nine issues on appeal. He asserts that appellate counsel should have argued: (1) that Alabama’s system of compensation for attorneys representing indigent defendants fails to provide adequate compensation to trial attorneys; (2) that there are “gaps” in the record that limited the ability of the appellate courts to review the record; (3) that the indictment was multi-plicitous; (4) that the circuit court erroneously allowed the admission of gory photographs; (5) that the circuit court gave an inadequate response to jurors’s questions *163 during deliberation; (6) that trial counsel was ineffective for failing to obtain information about the informants; (7) that there was racial bias in his prosecution; (8) that the circuit court should not have allowed the trial to be conducted well into the evenings; and (9) that the circuit court should have allowed individual sequestered voir dire examination.
When denying relief on this claim, the circuit court stated:
“The Court does not find it necessary to recite each alleged error as most have been discussed herein. In addition, the opinion issued in Bush III, clearly shows the matters raised on appeal. Suffice it to say that Bush has failed to prove that counsel was ineffective on appeal and this ground is due to be denied.”
(C.R. 811-12.)
As we stated in DeBruce v. State, 890 So.2d 1068, 1093-94 (Ala.Crim.App.2003):
“A defendant has the right to the effective assistance of counsel in his appeal to this Court. See Cochran v. State, 548 So.2d 1062 (Ala.Crim.App.), cert. denied, 493 U.S. 900, 110 S.Ct. 259, 107 L.Ed.2d 208 (1989). DeBruce argues on appeal that his appellate counsel should have raised an additional 33 issues before this Court. Mathis represented DeBruce on appeal and signed the brief prepared by the anti-death-penalty organization known as the Equal Justice Initiative. The brief presented 13 issues, and this Court issued a very lengthy opinion addressing those issues. ‘ “[W]e emphasize that the right to effective assistance of appellate counsel does not require an attorney to advance every conceivable argument on appeal which the trial record supports.” Gray v. Greer, 778 F.2d 350 at 353 (7th Cir.1985) (emphasis added [in Cochran ]), citing Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).’ Cochran, 548 So.2d at 1069-70.
“ ‘ “[Experienced advocates have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. Selecting the most promising issues for review has assumed a greater importance in an era when the time for oral argument is strictly limited in most courts and when page limits on briefs are widely imposed.” ’
“Boyd v. State, 746 So.2d 364, 403 (Ala.Crim.App.1999), quoting Jones v. Barnes, 463 U.S. 745, 746, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).”
On appeal, counsel raised 14 issues, which this Court addressed in a 67-page opinion.
Also, at the evidentiary hearing Glass-roth was asked no questions concerning his strategy on appeal and why he raised the issues that he raised on appeal. “When the record is silent as to the reasons for counsel’s actions we must presume that those actions were reasonable.” Hooks v. State, 21 So.3d 772, 788 (Ala.Crim.App.2008).
VIII.
Bush next argues that the circuit court erred in denying his discovery motions.
In Ex parte Land, 775 So.2d 847 (Ala.2000), the Alabama Supreme Court set out the standard for discovery in postconviction proceedings. The Court stated:
“We agree with the Court of Criminal Appeals that ‘good cause’ is the appropriate standard by which to judge post-conviction discovery motions. In fact, other courts have adopted a similar ‘good-cause’ or ‘good-reason’ standard for the postconviction discovery process. See [State v.] Marshall, [148 N.J. 89, 690 A.2d 1 (1997) ]; State v. Lewis, 656 *164 So.2d 1248 (Fla.1994); People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988). As noted by the Illinois Supreme Court, the good-cause standard guards against potential abuse of the postconviction discovery process. See Fitzgerald, supra, 123 Ill.2d at 183, 121 Ill.Dec. 937, 526 N.E.2d at 135. We also agree that New Jersey’s Marshall case provides a good working framework for reviewing discovery motions and orders in capital cases. In addition, we are bound by our own rule that ‘an evidentiary hearing must be held on a [petition for postcon-viction relief] which is meritorious on its face, i.e., one which contains matters and allegations (such as ineffective assistance of counsel) which, if true, entitle the petitioner to relief.’ Ex parte Boatwright, 471 So.2d 1257, 1258 (Ala.1985).
“We emphasize that this holding— that postconviction discovery motions are to be judged by a good-cause standard — does not automatically allow discovery under Rule 32, Ala. R.Crim. P., and that it does not expand the discovery procedures within Rule 32.4. Accord Lewis, supra, 656 So.2d at 1250, wherein the Florida Supreme Court stated that the good-cause standard did not affect Florida’s rules relating to postconviction procedure, which are similar to ours. By adopting this standard, we are only recognizing that a trial court, upon a petitioner’s showing of good cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to ‘fish’ through official files and that it ‘is not a device for investigating possible claims, but a means of vindicating actual claims.’ People v. Gonzalez, 51 Cal.3d 1179, 1260, 800. P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). Instead, in order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief. Cf. Porter v. Wainvrright, 805 F.2d 930, 933 (11th Cir.1986) (‘a hearing [on a habeas corpus petition] is not required unless the petitioner alleges facts which, if proved, would entitle him to federal habeas relief), cert. denied, 482 U.S. 918, 919, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987). Furthermore, a petitioner seeking postconviction discovery also must meet the requirements of Rule 32.6(b), Ala. R.Crim. P., which states:
“ ‘The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.’ ”
775 So.2d at 852-53 (footnote omitted).
In State v. Stallworth, 941 So.2d 327, 331 (Ala.Crim.App.2006), we stated:
“The Alabama Supreme Court in Land noted that the main emphasis in determining whether good cause is shown is a determination of the merits and the procedural posture of the underlying claims for which the discovery is sought to substantiate. The Alabama Supreme Court in Land stated:
“ ‘[W]e must determine whether Land presented the trial court with good cause for ordering the requested discovery. To do that, we must examine Land’s basis for the relief requested in his postconviction petition and determine whether his claims are facially • meritorious. Only after making that examination and determination *165 can we determine whether Land has shown good cause.’
“775 So.2d at 853. In [Ex parte] Hooks, [822 So.2d 476 (Ala.Crim.App.2000),] we stated:
“ ‘[A] claim that is procedurally barred ... in a postconviction petition clearly is not one that entitles a petitioner to relief. If a postconviction claim does not entitle the petitioner to relief then the petitioner has failed to establish good cause for the discovery of materials related to that claim. See Land.’
“822 So.2d at 481.”
976 So.2d at 513-14.
In June 1999, before the Alabama Supreme Court released its decision in Ex parte Land, Bush filed a motion for discovery. This motion was broad and requested discovery from the following agencies: the district attorney’s office, the City of Montgomery municipal court, the district and circuit courts of Montgomery County, the Montgomery Sheriffs Department, the Montgomery Police Department, the Montgomery coroner’s office, the Alabama Bureau of Investigation, the Alabama Department of Forensic Sciences, the Alabama State Troopers, Taylor Hardin Secure Medical Facility, and Bryce Hospital. In a separate motion filed in June 1999, Bush requested records from ten correctional facilities in Alabama.
In June 2000, the State objected to the court’s issuing the broad discovery requested in the motion, cited this Court’s opinion in Ex parte Land, 775 So.2d 840 (Ala.Crim.App.1998), and argued that Bush had not shown good cause for the discovery. The State did not object to discovery of the district attorney’s office file on Bush.
In July 1999, Judge Greenhaw granted Bush access to the district attorney’s office file. Also, in March 2001, Judge Green-haw granted Bush discovery from the Alabama Department of Corrections, the Montgomery County Detention Facility, and Mt. Meigs Juvenile Facility. Judge Greenhaw further stated that the request for records from Bryce and Taylor Hardin was “conditionally denied; however, petitioner may renew this request upon making a showing that they are relevant and/or that such facilities would have or should have such records.” (C.R.335.) The circuit court also conditionally denied discovery of other records pending a showing that the records existed and that they were relevant.
In April 2001, after the Supreme Court’s decision in Ex parte Land had been released in June 2000, Bush filed a supplemental motion for discovery. In this motion he stated that he had not been given the entire district attorney’s file on Bush and wanted the following: (1) psychiatric and personnel records of witnesses; (2) all arrest and conviction records of all witnesses; (3) information on the identity of the informants; and (4) documents related to the district attorney’s office use of their peremptory challenges to remove individuals from the venire.
In December 2002, Judge Greenhaw granted discovery of any records related to Bush in the possession of the Department of Forensic Sciences, the Alabama Bureau of Investigation, the Alabama Board of Pardons and Paroles, and Bryce Hospital. Judge Greenhaw also granted discovery of the taped statement that was made by Bush. The record also shows that the Alabama Bureau of Investigation and Bryce Hospital notified the court that they had no records regarding Bush in their possession. Judge Greenhaw issued new orders to both agencies requesting that they make a more “thorough search” of their records.
*166 A Rule 32 petitioner is not entitled to the criminal, mental-health, or correctional records of state witnesses. See Jackson v. State, 910 So.2d 797 (Ala.Crim.App.2005); State v. Stallworth, 941 So.2d 327 (Ala.Crim.App.2006). Also, when addressing discovery of personnel records of police officers we have stated:
“[O]ther jurisdictions have limited the right to obtain this information during discovery in a criminal case. See Jeffrey F. Ghent, Annotation, Accused’s Right to Discovery or Inspection of Records of Prior Complaints Against, or Similar Personnel Records of Peace Officer Involved in the Case, 86 A.L.R.3d 1170, 1176 (1978) (‘In nearly all of the cases within the scope of this annotation in which no discovery or inspection was allowed, the courts have stressed the speculative or unsupported nature of the defendant’s belief or suspicion that the officer’s personnel records would or might contain relevant and material information favorable to the defendant.’); Gary R. DeFilippo, To Disclose or Not to Disclose: A Discussion of Civil Rights Law § 50-A, Protecting Law Enforcement Officers’ Personnel Records From Unwarranted Review, 14 J. Suffolk Acad. L. 103, 104 (2000) (‘Criminal defendants have sought to gain access to police personnel records for the purpose of using information in those records to impeach the credibility of the police officer’s testimony. The hope is that the records will contain information sufficient to raise reasonable doubt in the juror’s mind of the defendant’s guilt. This hope, suspicion, or possibility of finding evidence of ‘prior vicious, immoral or illegal activities’ on the part of the police officer is just the kind of ‘fishing expedition’ the courts have sought to prevent.” (footnote omitted)).
State v. Turner, 976 So.2d 508, 515-16 (Ala.Crim.App.2007). Moreover,
“Alabama has never specifically addressed whether a prosecutor’s notes made during voir dire examination are likewise privileged. Our neighboring states of Florida, Georgia, and Mississippi have addressed this issue and have held that a prosecutor’s personal notes compiled during voir dire examination are work-product and are not discoverable by the defense. See Patton v. State, 784 So.2d 380 (Fla.2000); Thorson v. State, 721 So.2d 590 (Miss.1998); Foster v. State, 258 Ga. 736, 374 S.E.2d 188 (1988). See also State v. Carter, 641 S.W.2d 54 (Mo.1982). We join those jurisdictions that hold that a prosecutor’s notes compiled during jury selection are privileged and are not subject to discovery.”
Ex parte Perkins, 920 So.2d 599, 607 (Ala. Crim. App.2005).
In regard to Bush’s assertion that he was entitled to discovery of information concerning the' informants, the State asserted the following when responding to this claim:
“[Bush] alleges that he is entitled to discovery concerning a confidential informant from Pensacola, Florida, that ‘is particularly important in light of how [Bush] came to be arrested’ and that ‘[t]he state should provide evidence that this supposed informant exists and was reliable.’ Bush contends that the ‘unnamed informant may have been offered reward money for implicating him.’
“It is the State’s position that, even if the confidential informant received reward money, Bush’s request for discovery is due to be denied. The record does not indicate that a confidential informant testified against Bush at any grand jury, trial, or other proceeding, thus they were not subject to cross- *167 examination or impeachment by trial counsel.
“In addition, the record indicates that Bush was indicted after he was arrested. Therefore, even if the confidential informant was motivated by a hope of reward, the return of a lawful indictment subsequent to an arrest cures any alleged arrest irregularities. Freeman v. State, 586 So.2d 1013, 1015 (Ala.Crim.App.1991).”
(C.R. 360.) We agree with the State. In Freeman v. State, 586 So.2d 1013 (Ala.Crim.App.1991), we stated:
“Although we reject the appellant’s contention that his arrest was illegal, the ultimate outcome of this case would not change if we were to accept this argument. Under Yancey v. State, 48 Ala.App. 476, 478, 265 So.2d 918 (Ala.Cr.App.1972), ‘an unlawful arrest is not [a] bar to a prosecution of a subsequent indictment for the same charge.’ See also Coral v. State, 551 So.2d 1181, 1182 (Ala.Cr.App.1989); Ker v. Illinois, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886). In this case, an indictment was returned against the appellant in October of 1989 charging him with murder. This indictment, subsequent to his arrest, cured any alleged arrest irregularities.”
586 So.2d at 1015. Bush was not entitled to discovery related to a claim that has no merit. See State v. Stallworth, supra.
Given the circuit court’s conditional rulings, the amount of discovery that Bush was allowed, and prior caselaw, we cannot say that the circuit court’s rulings were erroneous.
IX.
Bush argues that the circuit court erred in denying his request for various experts to assist in the postconviction proceedings.
“[T]he law is clear that Rule 32 petitioners are not entitled to funds to hire experts to assist in postconviction litigation, ex parte or otherwise, the trial court did not err in denying the motion. Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003).” Johnson v. State, [Ms. CR-05-1805, Sept. 27, 2007] — So.3d —, — (Ala.Crim.App.2007).
Moreover, the circuit court granted Bush $3,100 for a mental-health expert, $1,000 for a forensic pathologist, $1,500 for an investigator, and $800 for a ballistics and firearms expert. The record does not support Bush’s argument.
X.
The circuit court correctly found that the following claims were procedurally barred:
(1) The record on appeal was not fully transcribed;
(2) Individual sequestered voir dire should have been granted;
(3) The trial court erred in refusing to answer a question about the jury’s role in sentencing;
(4) The trial court erred in litigating the trial into the late hours of the evening;
(5) The death sentence is unconstitutional because it was sought and imposed on the basis of racial bias;
(6) Alabama’s manner of execution is cruel and unusual.
These claims are procedurally barred because they could have been, but were not, raised on direct appeal. See Rule 32.2(a)(5), Ala. R.Crim. P.
For the foregoing reasons, we affirm the circuit court’s denial of Bush’s postconvietion petition attacking his capital-murder conviction and sentence of death.
AFFIRMED.
*168 WISE, P.J., and KELLUM, J., concur.
WINDOM, J., recuses herself.

. Pringle was convicted of attempted murder for the shooting of Tony Holmes during the robbery and was sentenced to life imprisonment without the possibility of parole. We affirmed his conviction on direct appeal, by an unpublished memorandum. See Pringle v. State, 428 So.2d 1380 (Ala.Crim.App.1983) (table).

. The circuit court found that the jury’s recommendation was a mitigating circumstance.

. We question whether the decisions in Carroll and Tomlin established new rules of criminal procedure. According to § 13A-5-47(e), Ala.Code 1975, a sentencing court was always required to consider a jury's recommendation as to sentence in a capital-murder trial. The Alabama Supreme Court in Carroll stated that it was taking the opportunity to further explain § 13A-5-47(e), Ala.Code 1975.

. Bush did not allege that counsel was ineffective in representing him in the sentencing hearing before the jury. The jury unanimously recommended a sentence of life imprisonment without the possibility of parole; thus, Bush could establish no prejudice. See Ferguson v. State, 814 So.2d 925, 948 (Ala.Crim.App.2000).

. On January 16, 2009, the Alabama Supreme Court withdrew its January 5, 2007, opinion in Laster and substituted a new opinion. Laster v. Norfolk Southern Ry., see 13 So.3d 922 (Ala.2009). The substituted opinion, although it still affirmed the judgment of the trial court, was substantially rewritten.

. The State argued in its answer to Bush’s postconviction petition that these claims were insufficiently pleaded and were due to be dismissed based on Rule 32.6(b), Ala. R.Crim. P.

. In a postjudgment order, the circuit court stated that even if it did not apply the aggravating circumstance that the murder was especially heinous, atrocious, or cruel, the court would still sentence Bush to death based on the compelling aggravating circumstances in this case. (Trial transcript, C.R. 931-32.)

. We have said this practice “smacks of sandbagging” and have condemned it. See Flowers v. State, 799 So.2d 966, 992 (Ala.Crim.App.1999).

. Section 13A-5-49(2) provides that a prior conviction involving the use or threat of violence is an aggravating circumstance.

. Rule 32.6(b), Ala. R.Crim. P., states: "The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.”

. It has been this Court’s experience that status conferences held in postconviction proceedings are seldom transcribed and contained in the certified record.

. The circuit court mistakenly noted that Bush was challenging his counsel’s arguments in the penalty phase because Bush referred to the challenged arguments as having been made in the penalty phase. However, Bush challenged his counsel’s guilt-phase closing argument.